1
2
3
4
5
6                          UNITED STATES DISTRICT COURT
7                         SOUTHERN DISTRICT OF CALIFORNIA
8

| | |
|---|---|
| 9   MABVAX THERAPEUTIC<br>10   HOLDINGS, INC.,<br>     a Delaware Corporation,<br>11<br>                                    Plaintiff,<br>12<br>     v.<br>13<br>     SICHENZIA ROSS FERENCE<br>14   LLP, f/k/a Sichenzia Ross Ference<br>     Kesner LLP, f/k/a Sichenzia Ross<br>15   Friedman Ference LLP; HARVEY<br>     KESNER; GREGORY<br>16   SICHENZIA; MICHAEL<br>     FERENCE; TARA GUARNERI-<br>17   FERRARA; MARC ROSS;<br>18   THOMAS ROSE; RICHARD J.<br>     BABNICK, JR.; DAVID B.<br>19   MANNO; AVITAL EVEN-<br>20   SHOSHAN PERLMAN; and<br>     DOES 1 THROUGH 10, inclusive,<br>21<br>                                 Defendants.<br>22 | Case No.:  18-cv-2494-WQH-AGS<br><br>**ORDER** |

23
24   HAYES, Judge:
25          The matters before the Court are the motion to dismiss or transfer venue filed by
26   Defendant Harvey Kesner (ECF No. 28) and the motion to dismiss or transfer venue filed
27   by the remaining Defendants (ECF No. 27).

28

## I.  BACKGROUND

On September 10, 2018, Plaintiff MabVax Therapeutics Holdings, Inc. initiated this action by filing a Complaint in the Superior Court of California for the County of San Diego, case number 37-2018-00045609-CU-PN-CTL, against Defendant Harvey Kesner (Defendant Kesner); Defendants Sichenzia Ross Ference LLP, Gregory Sichenzia, Michael Ference, Tara Guarneri-Ferrara, Marc Ross, Thomas Rose, Richard J. Babnick, Jr., David B. Manno, and Avital Even-Shoshan Perlman (Sichenzia Defendants); and doe defendants. Plaintiff MabVax brings claims for negligent professional practice, breach of fiduciary duty, breach of contract, restitution for unjust enrichment, deceit, and fraud, on the grounds that Defendants failed to disclose conflicts of interest, failed to maintain client confidentiality, and failed to provide proper legal advice on financial reporting requirements.  Plaintiff MabVax alleges that conflicts of interest existed because the Defendants held investments in MabVax and had relationships with MabVax's other investors, which were not fully disclosed.  Plaintiff MabVax further alleges that Defendants disclosed confidential MabVax information to other investors, to MabVax's disadvantage. Plaintiff MabVax alleges that Defendants provided improper legal advice on reporting requirements for investors, causing MabVax to disclaim reliance on prior SEC filings, causing Nasdaq to delist MabVax, and causing MabVax to suffer other related economic and reputational injuries.  Plaintiff MabVax seeks relief including damages and an order requiring Defendants to make a full disclosure and accounting of their interests and transactions in MabVax securities.

On October 30, 2018, Defendants removed the Complaint to this Court based on diversity jurisdiction.  (ECF No. 1).  On October 30, 2018, Defendants filed the first amended notice of removal.  (ECF No. 2).  On October 31, 2018, Defendants filed the second amended notice of removal.  (ECF No. 3).  On November 2, 2018, Defendants filed the third amended notice of removal, the operative Complaint in this action.  (ECF No. 6).

On November 30, 2018, the Sichenzia Defendants filed a motion to dismiss for personal jurisdiction pursuant to Rule 12(b)(2) and failure to state a claim pursuant to Rule 12(b)(6); and, in the alternative, a motion to transfer venue to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).  (ECF No. 27).

On December 3, 2018, Defendant Kesner filed a motion to dismiss for personal jurisdiction pursuant to Rule 12(b)(2) and, in the alternative, a motion to transfer venue to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).  (ECF No. 28).

On January 14, 2019, Plaintiff MabVax filed a response in opposition to both motions to dismiss.  (ECF No. 29).

On February 4, 2019, the Sichenzia Defendants filed a reply in support of the motion to dismiss (ECF No. 30) and a motion to strike (ECF No. 30-1).

On February 4, 2019, Defendant Kesner filed a reply in support of his motion to dismiss.  (ECF No. 31).

On February 5, 2019, Plaintiff MabVax filed a response in opposition to the motion to strike.  (ECF No. 32).

## II.    ALLEGATIONS OF THE COMPLAINT

Plaintiff MabVax is "is a clinical-stage biotechnology company that is developing treatments for certain insidious cancers . . . founded in San Diego more than a decade ago." (Ex. 1 to Third Am. Notice of Removal ¶ 1, ECF No. 6 at 8).  Plaintiff MabVax is "a Delaware corporation, with its principal place of business in San Diego County, California."  *Id.* ¶ 16.  Plaintiff MabVax "cannot earn product revenue" before "complet[ing] clinical trials, obtain[ing] regulatory approval and successfully commercializ[ing] one or more of its products."  *Id.* ¶ 2.  Plaintiff MabVax depends on "debt and equity financing" through "[u]nfettered access to the public capital markets."  *Id.*

"Defendant Sichenzia Ross Ference LLP" (the Firm), "is a limited liability partnership with its principal place of business in New York County, New York."  *Id.* ¶ 17.

Defendants Harvey Kesner, Gregory Sichenzia, Michael Ference, Tara Guarneri-Ferrara, Marc Ross, Thomas Rose, David Manno, Richard Babnick, and Avital Perlman are attorneys and partners of the Firm. *Id.* ¶¶ 18–26. Plaintiff engaged the Firm "and its team, led by [Defendant Kesner], as its counsel for securities reporting matters" for three years. *Id.* ¶¶ 3–4. Before entering a relationship with Plaintiff MabVax, the Firm represented "certain of Plaintiff's largest investors," including "Barry Honig . . . John Stetson, Phillip Frost, Mark Groussman, and Michael Brauser, as well as Defendants Sichenzia, Kesner, and Ference and many entities affiliated or controlled by those individuals" (the Investors). *Id.* ¶ 4 & n.4.

In March 2015, two Investors, Honig and Stetson, introduced Defendant Kesner to Plaintiff MabVax and recommended Kesner's services for "the preparation and filing of [Plaintiff's] SEC filings, and on related corporate matters." *Id.* ¶ 30. At the time of the introduction, "the Investors were negotiating the terms under which they would make certain investments into [Plaintiff]." *Id.* ¶ 31. On March 12, 2015, after the introduction, Stetson sent Plaintiff MabVax "the term sheet for the investments that explicitly required, as a condition of the financing, that [Plaintiff] 'engage the firm with which Harvey Kesner, Esq. is associated . . . for corporate and [sic] securities for a minimum of 12 months period [paid in advance] following closing.'" *Id.*

On April 2, 2015, Plaintiff MabVax executed an engagement letter with the Firm for "general corporate securities matters, including matters related to ongoing SEC reporting." *Id.* ¶ 32. The engagement letter included a provision "not[ing] that [the Firm] had represented Honig, Stetson, and another Investor, Groussman, as well as certain associated companies or investment entities." *Id.* The letter permitted the Firm to continue representing those clients but did "not permit [the Firm] to represent any interests that may be directly adverse to [MabVax] that involve matters substantially related to the services for which [MabVax] retained [the Firm]." *Id.*

Since 2009, "[the Firm] and [Defendant Kesner] have been inserted as counsel to at least 22 other companies (i.e., other than MabVax), in which Honig and/or Stetson has invested." *Id.* ¶ 38. Defendant Kesner manages and controls the securities held by entities including: Paradox Capital Partners, LLC; Darwin Investments, LLC; Darwin Retirement Investments, LLC; Darwin Ret LLC; Denville and Dover Fund LLC. *Id.* ¶ 40. "Through these entities," Defendant Kesner, the Firm, or both, "invested in at least 16 companies alongside Honig and various other Investors," including: Marathon Patent Group Inc.; Riot Blockchain Inc.; Majesco Entertainment Co.; Orbital Tracking Corp.; Viveve Medical, Inc.; Spiral Energy Tech., Inc.; BTCS Inc.; Cell Source, Inc.; Pershing Gold Corporation; AV Therapeutics, Inc.; Spherix Incorporated (where Kesner served as CEO and director while a partner at the Firm); Northern Wind Energy Corp.; Document Security Systems, Inc.; Passport Potash Inc.; MusclePharm Corporation; and Bullfrog Gold Corp. *Id.* ¶ 40 & n.10. Defendant Kesner invested in Plaintiff MabVax "through Paradox and Darwin Retirement," "by directly investing in [MabVax] through financings; by receiving 185,000 free shares as a condition to financing required by another one of the Investors; and by receiving, on at least one other occasion from at least one other Investor, a distribution of 50,000 shares." *Id.* ¶ 41. Defendant Kesner solicited the investment of Defendant Ference. *Id.*

"[T]hroughout [the Firm's] representation," Plaintiff MabVax was subject to a Consent Right that required "the Consent Right holder's permission before [MabVax] could raise additional money (such as any equity or debt financing)." *Id.* ¶ 48. The Consent Right gave the holder authority to block investment from outside sources—financing that Plaintiff MabVax heavily depends on as a clinical-stage biotechnology company. *Id.* ¶ 49. In 2015, in exchange for permission to seek outside funding, Plaintiff MabVax issued the Investors $9.6 million in stock and "hire[d] lawyers and other vendors handpicked and controlled by Investors." *Id.* Defendants were beneficiaries of the Consent Right, which

was not disclosed to Plaintiff MabVax. *Id.* ¶ 51. Defendants did not advise that Plaintiff MabVax "had the right to negotiate for greater transparency in how the Consent Right was held and . . . for greater limitations on its use." *Id.* Defendants did not inform Plaintiff that "the facts and circumstances of the ownership and use of the Consent Right could themselves create questions about the calculation and reporting of the beneficial ownership of the Investors." *Id.*

During the first week of December 2015, Plaintiff MabVax's leadership team discovered that Southern Biotech—whose president and controlling shareholder was Honig, and who was "the Investors' then-designated official holder of the Consent Right"—"had transferred certain shares that it was required to hold in order to maintain the Consent Right." *Id.* ¶¶ 52, 54. "MabVax urgently emailed Defendants Kesner and Guarneri-Ferrara" for "confirm[ation] that MabVax was finally free of the onerous Consent Right." *Id.* ¶ 54. "MabVax explicitly instructed Kesner and Guarneri-Ferrara to avoid alerting Southern Biotech," stating, "please hold back sending the consent to Southern Biotech[.]'" *Id.* Plaintiff MabVax "did not want to prematurely alert the Investors that they had inadvertently terminated the Consent Right—and thus lost their significant leverage." *Id.*

> Instead, Kesner and Guarneri-Ferrara deliberately disregarded the Company's instructions. The next day, Kesner emailed Guarneri-Ferrara (with the subject line MabVax): "Approval of investments Does Southern Bio have or the transferees from SB?" Guarneri-Ferrara replied that she would "need to see the docs by which he [i.e., Honig] sold or assigned his shares[.]" "Ask for," Kesner replied . . . . "OK," Guarneri-Ferrara responded. The next day, Stetson emailed Guarneri-Ferrara a copy of the relevant language. . . .
> Later that day, MabVax heard directly from Honig that the shares that had been transferred out of Southern Biotech would be transferred back to Southern Biotech—thereby creating a potential argument that Southern Biotech had reestablished the Consent Right. In a second email, Honig thanked MabVax's leadership for "the heads up regarding Southern Biotech," and stated that the shares upon which the Consent Right relied were "back in[] Southern Biotech." . . . The Company had never discussed the issue with

6

1
2
3
4
5
6
7

Honig, much less given him a "heads up" that the Consent Right had terminated to MabVax's great benefit and relief. . . .

MabVax's CEO replied to Honig saying, "I did not give you the heads up on Southern Biotech. You already realized that you had transferred all shares out of that entity. Someone else must have alerted you." . . . [O]nly *after* . . . did Kesner address the matter with MabVax—not to help his client, but to declare that a never-explained ethical conflict meant that he and his law firm could not become involved in the dispute over whether the Consent Right had been terminated.

*Id.* ¶¶ 55–57.  In early January 2016, Plaintiff MabVax sought the Firm's advice regarding new financing and the corresponding consents necessary under the Consent Right.  *Id.* ¶ 59.  Defendants' internal emails "expressed concern about '[the Firm's] conflict' with respect to the issue" and discussed the possibility that the Consent Right terminated when Southern Biotech transferred its shares.  *Id.* ¶¶ 59–60.  Defendant Kesner "promptly replied 'Here is my suggestion. Have Southern Bio itself amend the agreement with MabVax to simpl[y] terminate the Southern Bio right and provide a new approval right to Barry personally. Much simpler. Don't discuss the below specifically with Greg [MabVax's CFO].'"  *Id.* ¶ 60.  Defendants did not inform Plaintiff of the possible position that the Consent Right terminated when Southern Biotech transferred its shares.  *Id.*  On January 12, 2016, unaware of the position, Plaintiff "agreed . . . to provide Southern Biotech with a new Consent Right."  *Id.* ¶ 61.

"During the course of the representation, the Investors repeatedly purchased convertible preferred stock from MabVax pursuant to contracts and public filings advised by Sichenzia and Kesner."  *Id.* ¶ 65.  A convertible preferred shareholder could, on request, convert convertible preferred shares "into shares of common stock that could be immediately sold on the open market."  *Id.*  The convertible preferred shares were "subject to 'beneficial ownership blockers' that forbade the conversion of preferred shares into common stock if, as a result, the converting shareholder would beneficially own more than a certain percentage of MabVax (most often, 4.99%)."  *Id.*

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The securities laws require certain disclosures when any person is a beneficial owner of "five percent of a class of any registered equity security of an issuer." *Id.* ¶ 43. Persons who "act together as a group in connection with investment in a company are treated as a 'person' for purposes of this reporting requirement." *Id.* The Investors acted together as a group within the meaning of the securities laws in the following ways: investing together in dozens of companies; coordinating amounts each Investor would invest in those companies; consulting with one another regarding collective recommendations or demands for those companies; including other Investors on communications with those companies; installing certain of the Investors as directors or officers or counsel in those companies; and coordinating meetings and introductions between those companies and third parties— such as institutional investors, investor relations firms, and potential strategic transaction partners—and often requiring investee companies to retain Investor-selected advisors; and a single lead investor coordinating investments for the others. *Id.* ¶¶ 44, 46.

"Kesner advised MabVax throughout the engagement that the 'blockers' operated as a legal barrier against any need to aggregate or report the beneficial ownership of the Investors as reaching 5%. He also advised that the blockers allowed for one Investor to convert shares without regard to the ownership of MabVax stock by other Investors." *Id.* ¶ 66. The Firm and Defendant Kesner "assured MabVax that the 'ownership blockers' . . . were a legal firewall against the formation of any group such that other factors . . . did not matter." *Id.* ¶ 46. "[T]his advice was false. The blockers do not legally foreclose a determination that the Investors (or some of them) may be deemed as having acted as a previously undisclosed group. [T]he test to determine whether investors are part of a 13D Group is a multi-factor test and courts can and do find a group to exist notwithstanding the existence of beneficial ownership blockers." *Id.* ¶ 66.

Defendant Kesner knew "of his and the other Investors' practices and inter-relationships" and did not advise Plaintiff MabVax "of the significant risk that the Investors

would be deemed a 'group' under the securities laws" or the economic and reputational consequences of undisclosed investors possibly satisfying the definition of a group. *Id.* ¶ 45. The Firm and Defendant Kesner "repeatedly advised MabVax that the Investors were *not* a group for purposes of the securities laws, and they made sure that [MabVax's] public filings disaggregated the Investors' holdings." *Id.* ¶ 46. The Firm, primarily through Defendant Kesner, "reviewed, edited and approved literally dozens of SEC filings over three years—many reporting the Investors' beneficial ownership and outstanding share counts—without even once suggesting there was any risk that the Investors could be considered a group, or that it would be in [MabVax's] interest to aggregate the Investors' individual holdings for purposes of beneficial ownership reporting in these filings." *Id.* The Firm "suggest[ed] that [MabVax] had a contractual obligation to disaggregate the Investors' ownership." *Id.* Defendant Kesner "suggested that [MabVax] may have violated its obligations to the Investors by even publicly suggesting that a question could exist" regarding whether any Investors qualified as a group. *Id.*

"In December 2016, MabVax received a request for information from a regulator in connection with a non-public investigation into trading activity in MabVax stock." Plaintiff MabVax sent the inquiry and "a draft response prepared by non-lawyers" to the Firm. *Id.* ¶¶ 62–63. Defendant Kesner "advised MabVax that the regulator's request was a routine inquiry and nothing to be concerned about," and criticized the draft response "as 'far too inclusive.'" *Id.* ¶ 63. Defendant Kesner "personally edited the response in a manner he advised was appropriate under the circumstances," but later "expose[d] [Plaintiff] to claims that its response was misleading or, at least, difficult to defend." *Id.* "For example, in response to a question about the nature and frequency of MabVax's contact with two of the Investors, Kesner characterized the contact as 'occasional.'" *Id.*

> [I]n September 2017, an examiner for Nasdaq emailed an associate at [the Firm] ("Associate One") asking for the name of "an investor" whom Associate One had stated was being issued 100,000 shares "for diligence."

Associate One emailed Defendants Kesner and Perlman, stating "The nasdaq examiner is asking for . . . Barry's name [i.e., Honig]. The attached list indicates he is not an investor though. Do you have any issue with me releasing his name?" Perlman replied, to Kesner only, "Maybe the 100,000 diligence shares should be issued to HSC, which did invest." HSC refers to HS Contrarian Investments, LLC, an entity purportedly controlled by Stetson.

*Id.* ¶ 67.  "In late January 2018, MabVax disclosed that it had received notice that the SEC was conducting an investigation . . . ." *Id.* ¶ 70.  On February 2, 2018, the SEC issued a subpoena.  *Id.*  "MabVax believes that [the] investigation pertains to MabVax's relationship with certain of its investors, including whether or not they have acted as an undisclosed control group in connection with MabVax, and the manner in which they may have sought to control or influence MabVax." *Id.*

"On February 16, 2018, CNBC published a highly critical article about Riot Blockchain" that identified Honig and stated: "SEC filings suggest that when Honig began his charge to take over the board, he was represented by lawyer Harvey Kesner of Sichenzia Ross Ference Kesner LLP. A few months later, Kesner's law firm appears on Riot Blockchain's SEC filings. Kesner's company, Paradox Capital Partners LLC, owns Riot stock, according to SEC filings. When reached by phone, Kesner said he didn't know anything about Riot Blockchain and Barry Honig and hung up." *Id.* ¶ 71.  "After her call, the CNBC reporter sent Kesner an email noting that Kesner's 'company, Paradox Capital owns shares in Riot. Your partner Michael Ference also owns shares.'" *Id.* ¶ 72.

That email was ultimately forwarded to, among others, Defendants Gregory Sichenzia, Ross and Ference. . . . Ference asked Gregory Sichenzia, "Does he have any other subpoenas?" Gregory Sichenzia replied "Yes mabvax 2 weeks ago. [A class action law firm] just filed for plaintiffs in a class action against riot. This is going to be real bad." . . . In a separate thread of the same email chain, Ross wrote to Ference that Kesner was planning to threaten a lawsuit against CNBC. He added, "[a]nd did you know the SEC issued a formal order of investigation against Mabvax in January 28th?" "Figures," Ference replied, "Bad idea." . . .

10

In a separate email, Ference replied to Ross "We need a protocol of subpoena to form comes in it has to be given to exec comm. no one should get a subpoena and handle themselves without talking to us." Ross responded to Ference: "Ha. Harvey and Greg [Sichenzia] are on the executive [] committee, you know, unless Greg gets his way, as he doesn't want us to continue to represent Barry [Honig], as the noose gets tighter."

*Id.* ¶¶ 72–74. On February 16, 2018, Defendant Ross emailed Defendant Sichenzia: "I spoke with Harvey. He got this below email from the [CNBC] reporter before today. I am looking at the Mabvax subpoena that [a Sichenzia junior associate (hereafter, "Associate Two")] is working on for Harvey." *Id.* ¶ 75. Defendant Sichenzia responded, "He should have let us know instead of being blindsided." *Id.*

On March 7, 2018, an online article stated: "A small army of writers, both real and imaginary, has produced nearly 600 bullish articles about companies backed by financier Barry C. Honig," that "[m]any of the featured stocks fell sharply after reaching promotion-fueled highs," that "[t]hose names included VBI Vaccines, 22nd Century Group, U.S. Gold Corp., Vuzix, Mabvax Therapeutics and Global Blockchain Technologies," and that "[t]he articles and the methods employed are nearly identical to those that led the SEC to charge 27 individuals and entities last year . . . ." *Id.* ¶ 77. "That same day, Gregory Sichenzia forwarded a link to the article to Rose, stating 'Just awful did u read.' In a subsequent email in the chain, Gregory Sichenzia wrote that the article, 'mentions every one of Harvey clients he has ever had.' 'Pretty much,' Rose replied." *Id.*

"On April 14, 2018, Kesner sent MabVax an email proposing an additional project in response to the SEC investigation—that MabVax should file an administrative challenge against the SEC to allow it to register even more shares for the benefit of the Investors." *Id.* ¶ 79.

Associate Two was copied on the email and forwarded it to Ross. Ross replied to Associate Two, "He's lost his mind." Ross then forwarded the chain to Rose with the commentary, "This is nutz." In a subsequent email in the chain, Ross wrote to Rose that "Honig [is] the subject of the enforcement inquiry. The

only thing for the company to do is to throw Barry under the bus, how in G-d's name can Harvey be advising this company. And I found out on Friday that is Babnick didn't want to be involved, and [Associate Two] was left to flounder and have to deal with Harvey on his own." . . .

On April 17, 2018, Associate Two . . . emailed Ross about an SEC request for on-the-record testimony from a top MabVax executive. Associate Two stated that "Harvey threw out the idea of me going alone . . . I don't mind going with someone else, but I have never defended a witness at an OTR/deposition by myself." Ross forwarded the email to Babnick with the comment: "Might be a conflict now, no?" "No. Let's discuss tomorrow," Babnick replied.

*Id.* ¶¶ 79–80.

The Firm "did not acknowledge its intractable conflicts and withdraw from representation until late May 2018—after wasting MabVax's money and six months during which competent counsel would have assisted the Company in responding to the SEC investigation." *Id.* ¶ 82. On May 21, 2018, Defendant Ross advised Defendant Kesner: "I wouldn't think it would be a good idea for you to meet and speak with [successor counsel], both from a firm perspective and from your individual perspective." *Id.* ¶ 83. On May 22, 2018, Defendant Kesner met with successor counsel and "repeatedly made false and misleading statements . . . for example . . . denying that he was involved in MabVax's response to the December 2016 request for information from a regulator," "denying that the Company was required to hire Sichenzia and Kesner as condition of the Investors' investment); inaccurately characterizing . . . the very "blocker" firewall theories that created the exposure in the first instance; and refusing to disclose his outside trading activity in MabVax stock." *Id.*

Associate One and Associate Two engaged in an instant message conversation shortly after Associate Two met with successor counsel, at Kesner's request. In the instant message conversation, Associate Two recounted how he under-disclosed facts to successor counsel in an attempt to steer successor counsel away from the Investors and [the Firm]. Associate Two recounted his sense that: "the guy [i.e., successor counsel] was wavering between 'this is a real clusterfuck' to 'they are prob looking at the investors . . .'" and stated that "its

12

[sic] tough for me because like wtf do I say?" Associate Two then acknowledged that "i can sell the investors down the river" . . . . Instead, Associate Two explained, in speaking with successor counsel, he limited his assessment of the investigation to what the SEC had put in writing, i.e. "i was like 100 percent looking at the investors, that's obvious based on the subpoena." "[R]ight," Associate One responded, "you have to juggle what to say without this guy thinking holy shit this idiot firm[.]"

*Id.* ¶ 84.   During the transition to successor counsel, Defendant Kesner "alerted the Investors of a sensitive meeting with successor counsel within ninety (90) minutes of successor counsel leaving his office." *Id.* ¶ 85.   The Firm and Defendant Kesner "demand[ed] that MabVax pay a large legal fee as a condition of responding to successor counsel's questions" and later withdrew the condition, "instead simply refusing to provide any additional information . . . ." *Id.* ¶ 86.

After Plaintiff MabVax discovered that the beneficial ownership blockers did not preclude the Investors from qualifying as a 13D group, "MabVax became concerned about the validity of the 2,628,766 shares of common stock issued to the Investors via preferred share conversions." *Id.* ¶ 68.   In addition, Plaintiff MabVax "could not be certain that its previous reports regarding the number of common shares outstanding were accurate" and "had to publicly disclaim reliance on four years of previously filed SEC reports and financial statements and is unable to file reports for 2018 as it is required to do under SEC and Nasdaq rules." *Id.*   "Under these circumstances . . . MabVax has been delisted from the Nasdaq, and has been named in putative class actions filed by certain of its shareholders." *Id.*   "Additionally, in order to clear the cloud over its capitalization table, MabVax . . . file[d] a petition in the Delaware Chancery Court seeking . . . judicial validation of the unknown number of shares of arguably invalid common stock, and other corporate acts that also may not be valid as a result of Defendants' false legal advice." *Id.* ¶ 69.

"During the period of its representation, [the Firm] charged MabVax roughly $1,600,000 . . . ." *Id.* ¶ 87. "[A]s an investor in MabVax, Kesner, through Paradox and Darwin Retirement, received shares of convertible preferred stock." *Id.* ¶ 88. The Firm and Defendant Kesner "allowed Investors to convert 2,628,766 shares (for a market value at issuance of an estimated $22,200,000 based on the closing price of common stock on the date of conversion)." *Id.* "Kesner himself received, through conversions requested by Paradox and Darwin Retirement, at least 22,980 shares of MabVax common stock (valued at $92,969) for his own personal benefit." *Id.* "To this day, MabVax does not know the full extent of [the Firm], Kesner, and Ference's trading in MabVax stock, despite having asked repeatedly." *Id.* ¶ 89. "[The Firm] and [Defendant Kesner] have never disclosed the circumstances under which Kesner initially and subsequently invested in MabVax . . . ." *Id.* ¶ 42. "Defendants . . . did not disclose the full extent of their relationships with other Investors." *Id.* ¶ 34. At no time before or during the representation "did Defendants ever inform [Plaintiff] that the Investors had previously inserted [the Firm] and [Defendant Kesner] as company counsel for other companies in which the Investors had invested." *Id.* ¶¶ 34–35. Defendant Kesner did not "disclose the circumstances under which he had invested in [Plaintiff] and [the other companies] in coordination with other Investors." *Id.* ¶ 34. Defendants did not disclose any basis "upon which [Plaintiff] could assess whether a waiver was in [Plaintiff's] interest or . . . whether [the Firm's] representation of and relationship with the Investors was in fact 'substantially related to' or 'adverse to' [Plaintiff's] interests." *Id.* "Had such matters been honestly disclosed," Plaintiff would not have retained or continued to rely on the Firm. *Id.* ¶¶ 34–35.

Plaintiff seeks relief including damages and a "full disclosure and accounting of [Defendants'] interests and transactions in Plaintiff's securities, whether transacting in their own names or with respect to transactions undertaken through entities, nominees or other Investors." *Id.* at 44.

14

### III. PERSONAL JURISDICTION

A party may move for dismissal for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). "Where . . . the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citation omitted), *abrogated on other grounds as recognized by Axiom Foods, Inc. v. Acerchem Int'l, Inc.* 874 F.3d 1064 (9th Cir. 2017)). "The plaintiff cannot 'simply rest on the bare allegations of its complaint,' but uncontroverted allegations in the complaint must be taken as true." *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). "[W]e may not assume the truth of allegations in a pleading which are contradicted by affidavit . . . but we resolve factual disputes in the plaintiff's favor." *Id.* (quotation and citation omitted).

"Federal courts apply state law to determine the bounds of their jurisdiction over a party." *Axiom*, 874 F.3d at 1067 (quotation omitted). "California authorizes its courts to exercise jurisdiction to the full extent that such exercise comports with due process. . . . Accordingly, the jurisdictional analyses under [California] state law and federal due process are the same." *Id.* (quotations omitted); *see also* Cal. Civ. Proc. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."). A defendant may be subject to either general or specific personal jurisdiction under due process analysis. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

In this case, Plaintiff MabVax contends that the exercise of specific personal jurisdiction is proper over Defendants. A court exercises specific personal jurisdiction if

"the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002) (citing *Hanson v. Denckla*, 357 U.S. 235, 251 (1958)). "A nonresident defendant must have 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Axiom*, 874 F.3d at 1068 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014)). "While 'a single act can support jurisdiction,' the act must first 'create[ ] a substantial connection with the forum.' . . . Put differently, 'some single or occasional acts related to the forum may not be sufficient to establish jurisdiction if their nature and quality and the circumstances of their commission create only an attenuated affiliation with the forum.' . . . A defendant's 'random, fortuitous, or attenuated contacts' will not suffice." *Id.* (first quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 n.18 (1985), then quoting *Walden*, 571 U.S. at 286).

"[F]or a court to exercise specific jurisdiction over a nonresident defendant: (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id.* (quotations and alteration omitted). "The plaintiff bears the burden of satisfying the first two prongs of the test," and "[i]f the plaintiff meets that burden, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (quotations omitted). "A purposeful availment analysis is most often used in suits sounding in contract. . . . A purposeful direction

16

1   analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*,

2   374 F.3d at 802; *but see Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d

3   597, 606 (9th Cir. 2018) (concluding that the effects test of purposeful direction does not

4   apply "where an intentional tort is committed within the forum state").

5   **A. Purposeful Availment**

6       The Sichenzia Defendants contend that purposeful availment analysis governs

7   personal jurisdiction in this case because only some of Plaintiff's claims sound in tort and

8   all of Plaintiff's claims arise from the retainer agreement with Defendants. The Sichenzia

9   Defendants assert that the Firm did not market legal services in California; is not

10   incorporated or qualified to do business in California; has no employees, phone, fax,

11   address, post office box, bank account, or agent for service of process in California; and

12   pays no taxes in California. The Sichenzia Defendants assert that the Firm's operations,

13   and all conduct alleged to be wrongful in this case, occurred in New York. The Sichenzia

14   Defendants assert that the Firm did not have a long-term business relationship with Plaintiff

15   or perform legal services in California.

16       The Sichenzia Defendants contend that the jurisdictional contacts of Defendant

17   Kesner cannot be imputed to the other individual partner Defendants. The Sichenzia

18   Defendants assert that the California contacts of the individual Sichenzia Defendants are

19   nonexistent or tangential, because some were not involved in Plaintiff's representation and

20   others provided legal services from New York.

21       Defendant Kesner contends that Plaintiff must show purposeful direction and

22   purposeful availment to establish California jurisdiction. Defendant Kesner asserts that he

23   did not travel to California or meet with Plaintiff's representatives for the purpose of

24   soliciting legal work for Plaintiff. Defendant Kesner asserts that Kesner met Plaintiff in

25   California twice before Plaintiff engaged the Firm, during meetings that "pertained to third-

26   party representation." (ECF No. 28-1 at 20). Defendant Kesner asserts that Kesner met

27

28

with Plaintiff in California once after Plaintiff engaged the Firm, "for social purposes over lunch while Kesner was in California attending a conference." *Id.* Defendant Kesner asserts that the California meetings are too attenuated to demonstrate specific jurisdiction. Defendant Kesner asserts that he performed no legal services for Plaintiff in California, and that Plaintiff engaged California counsel for local matters. Defendant Kesner asserts that Kesner's emails and phone calls to Plaintiff in California did not invoke the benefits and protections of California or promote the transaction of business within California. Defendant Kesner contends that specific jurisdiction cannot be grounded in the engagement agreement, which was not entered in California. Defendant Kesner asserts that no final, binding agreement required Plaintiff to retain Defendant Kesner or the Firm as counsel as a condition of investment.

Plaintiff MabVax contends that the purposeful direction analysis governs personal jurisdiction because there are multiple tort claims in addition to the contract claim in this case. Plaintiff MabVax contends that either purposeful direction or purposeful availment satisfies the first prong of the specific jurisdiction test. Plaintiff MabVax contends that the purposeful availment analysis is satisfied in this case because Kesner attended two meetings in California before MabVax engaged the Firm. Plaintiff MabVax asserts that Kesner solicited MabVax to retain the Firm because Kesner solicited MabVax to enter into business with investors, whose investment was conditioned on MabVax retaining Kesner and the Firm as counsel. Plaintiff MabVax contends that specific jurisdiction can be established with allegations of malpractice or intentional torts committed during the ongoing provision of professional services to a corporation headquartered in the forum state.

Courts analyzing purposeful availment determine whether a defendant "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto*, 539 F.3d at 1016 (quoting *Sher v. Johnson*, 911 F.2d

1357, 1362 (9th Cir. 1990)).  "[A] contract alone does not automatically establish minimum contacts in the plaintiff's home forum."  *Id.* at 1017 (citing *Burger King*, 471 U.S. at 478).  A contract corresponding to a "one-shot affair" type of transaction does not demonstrate purposeful availment absent "ongoing obligations," "continuing commitments," or "substantial business" in California.  *Id.*

In *Sher*, the Court of Appeals applied a purposeful availment analysis to determine whether there was personal jurisdiction in California over a Florida law partnership and individual firm partners.  911 F.2d at 1360, 1362.  The plaintiff, a California resident, had brought malpractice claims against the defendants based on legal representation during Florida criminal proceedings.  *Id.* at 1360, 1364.  The court explained,

> Although some of Sher's claims sound in tort, all arise out of Sher's contractual relationship with the defendants. In such a case, the mere existence of a contract with a party in the forum state does not constitute sufficient minimum contacts for jurisdiction. . . . Instead, we must look to "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine if the defendant's contacts are "substantial " and not merely "random, fortuitous, or attenuated."

*Id.* at 1362 (quoting *Burger King*, 471 U.S. at 479–80).

In *Sher*, the plaintiff, his wife, and a California attorney, flew to Tampa for purposes of "locat[ing] suitable Florida counsel to try the case."  *Id.* at 1360.  The defendants were selected and retained as counsel following "numerous" interviews.  *Id.*  The plaintiff gave one of the partners a retainer check at the Tampa Airport.  *Id.*  The defendants mailed the retainer agreement details to the plaintiff in California.  *Id.*  The plaintiff signed the letter and mailed it back to Florida.  *Id.*  The defendants sent bills to the plaintiff California.  *Id.*  The plaintiff's wife sent checks, drawn on a California bank, to Florida to pay those bills.  *Id.*  "To secure these payments, and pursuant to the retainer agreement, the Shers executed

a deed of trust and promissory note in favor of the [law firm], encumbering the Shers' residence in Los Angeles in the amount of $75,000." *Id.*

The court stated that the alleged jurisdictional contacts of individual partners were attributable to the partnership when in the scope of the partnership's ordinary business. *Id.* at 1362.  The court stated,

> As normal incidents of this representation the partnership accepted payment from a California bank, made phone calls and sent letters to California. These contacts, by themselves, do not establish purposeful availment; this is not the deliberate creation of a "substantial connection" with California . . . nor is it the promotion of business within California. For one thing, the business that the partnership promoted was legal representation in Florida, not California. Moreover, the partnership did not solicit Sher's business in California; Sher came to the firm in Florida. There is no 'substantial connection' with California because neither the partnership nor any of its partners undertook any affirmative action to promote business within California. . . .
> Out-of-state legal representation does not establish purposeful availment of the privilege of conducting activities in the forum state, where the law firm is solicited in its home state and takes no affirmative action to promote business within the forum state.

*Id.* at 1362–63 (quoting *Burger King*, 471 U.S. at 475).  The court stated that a partner's trips to California did not "create a 'substantial connection' with California":

> [I]n the context of the "parties' actual course of dealing" . . . the partnership was [not] availing itself of any significant California privilege by coming into the state to talk to its client. The three trips to California were discrete events arising out of a case centered entirely in Florida; they appear to have been little more than a convenience to the client, who would otherwise have had to travel to Florida.

*Id.* at 1363 (quoting *Burger King*, 471 U.S. at 479).  The court concluded, however, that the deed of trust executed for the partnership's benefit was a significant contact with California adequate to support personal jurisdiction over the partnership, "looking at the partnership's entire 'course of dealing' with the Shers . . . including the calls and letters, the trips and the deed." *Id.* at 1363–64.  The court concluded that there was not personal

20

jurisdiction over the individual partners, who were not beneficiaries of the deed of trust and had only California contacts incidental to the representation.  *Id.* at 1366 ("[W]hile each partner is generally an agent of the partnership for the purpose of its business, he is not ordinarily an agent of his partners. Thus, a partner's actions may be imputed to the partnership for the purpose of establishing minimum contacts, but ordinarily may not be imputed to the other partners.").

In this case, the Complaint alleges that Defendant Kesner was the partner with primary responsibility on the engagement with Plaintiff MabVax.  The Complaint alleges that Defendant Kesner traveled to San Diego to solicit and perpetuate the engagement.  The Complaint alleges that on March 12, 2015, Plaintiff MabVax received a term sheet requiring the engagement of Defendant Kesner and his associated law firm as a condition of obtaining financing from the Investors.  The Complaint alleges that on April 2, 2015, pursuant to the financing agreement, Plaintiff executed an engagement letter with the Firm, on terms dictated by the Firm.  The Complaint alleges that the engagement letter provided for representation on general securities matters and ongoing SEC reporting.  The Complaint alleges that the engagement letter included a limited waiver based on the Firm's existing representation of certain Investors.  The Complaint alleges that Defendant Kesner is one of the Investors and solicited a $25,000 investment from Defendant Michael Ference.  The Complaint alleges that on April 14, 2018, Defendant Kesner sent Plaintiff an email proposing an additional project to respond to Plaintiff's SEC investigation.  The Complaint alleges that the Firm acknowledges conflicts of interest and withdrew from representing Plaintiff in May 2018.  The Complaint alleges that Firm employees and Defendant Kesner met with and made false and misleading statements to successor counsel.  The Complaint alleges that the Firm and Defendant Kesner demanded a large legal fee as a condition of responding to the questions of successor counsel.

The Sichenzia Defendants provide a document stating that the Firm is registered as a limited liability partnership with the New York Department of State Division of Corporations.  (ECF No. 27-11 at 44).[1]  The Sichenzia Defendants provide the declaration of Defendant Gregory Sichenzia, "a member of the Firm since it was formed" in 1998. (Sichenzia Decl. ¶ 2, ECF No. 27-8 at 2).  Defendant Sichenzia states in the declaration that he has performed legal work in New York for other California clients that he met at conferences in California.  *Id.* ¶ 5.  Defendant Sichenzia states he did not perform work for Plaintiff and did not have contact with any representative of Plaintiff.  *Id.*  The Sichenzia Defendants provide the declaration of Tara Guarneri-Ferrara, a partner of the Firm. (Guarneri-Ferrara Decl. ¶ 3, ECF No. 27-4 at 2).  Defendant Guarneri-Ferrara states in the declaration that she owns an interest in a vacation property in Palm Desert, California.  *Id.* ¶ 4.  Defendant Guarneri-Ferrara states that in April 2015, she spent one work day at Plaintiff MabVax's headquarters "in an introductory manner when the Firm had just been retained."  *Id.* ¶ 5.  Defendant Guarneri-Ferrara states that she has performed legal work in New York for other California clients.  *Id.*

The Sichenzia Defendants provide the declaration of Defendant Michael Ference, a partner of the Firm.  (Ference Decl. ¶ 3, ECF No. 27-7 at 2).  Defendant Ference states in the declaration, "Nearly all of the legal work I perform at the Firm is performed in the State of New York."  *Id.*  Defendant Ference states, "For the past 20 or so years, I may have been admitted pro hac vice solely for the purpose of participating in an arbitration in California."  *Id.* ¶ 5.  Defendant Ference states that he did not perform work for Plaintiff and did not have contact with any representative of Plaintiff.  *Id.* ¶ 7.  The Sichenzia Defendants

---

[1] The Sichenzia Defendants request judicial notice of Plaintiff's state court complaint, which Defendants previously removed to this Court.  The Sichenzia Defendants request judicial notice of a printout of the Firm's registration with the New York Department of State Division of Corporations.  Plaintiff has not filed an opposition to the requests for judicial notice.  The requests for judicial notice are granted.  *See* Fed. R. Evid. 201; *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

18-cv-2494-WQH-AGS

provide the declaration of Defendant Marc Ross, a partner of the Firm.  (Ross Decl. ¶ 3, ECF No. 27-6 at 2).  Defendant Ross states in the declaration, "I recall seeking to appear and appearing at a private mediation for a New York client in the State of California in or about May 2010."  *Id.* ¶ 5.  Defendant Ross states that he did not perform work for Plaintiff and did not have contact with any representative of Plaintiff.  *Id.*

The Sichenzia Defendants provide the declaration of Defendant Thomas Rose, a partner of the Firm.  (Rose Decl. ¶ 3, ECF No. 27-5 at 2).  Defendant Rose states in the declaration that he "performed approximately three hours of work for [Plaintiff] after it became a client of the Firm."  *Id.* ¶ 7.  Defendant Rose states that he did not have contact with any representative of Plaintiff.  *Id.* ¶ 7.

The Sichenzia Defendants provide the declaration of Defendant Richard Babnick, a partner of the Firm.  (Babnick Decl. ¶ 3, ECF No. 27-3 at 2).  Defendant Babnick states in the declaration, "Between May 2016 and April 2017, I appeared as pro hac vice counsel for non-California residents Frank and Michelle Mazzola in an action filed by the [SEC] in the U.S. District Court for the Northern District of California . . . . I attended a motion argument in Federal Court in California, and I attended a half-day Court-Ordered Settlement Conference in California."  *Id.* ¶ 6.  Defendant Babnick states that he did not have contact with any representative of Plaintiff.  *Id.* ¶ 7.  Defendant Babnick states that he performed 4.7 hours of legal work for Plaintiff related to the SEC investigation.  *Id.*

The Sichenzia Defendants provide the declaration of Defendant David Manno, a partner of the Firm.  (Manno Decl. ¶ 3, ECF No. 27-9 at 2).  Defendant David Manno states in the declaration, "I do perform work for clients of the Firm that are located in California but the work is performed entirely within the state of New York."  *Id.* ¶ 5.  Defendant Manno states that the work he performed for Plaintiff MabVax "was performed from the Firm's New York office."  *Id.* ¶ 7.  The Sichenzia Defendants provide the declaration of Defendant Avital Perlman, a partner of the Firm.  (Perlman Decl. ¶ 3, ECF No. 27-10 at

2).  Defendant Avital Perlman states in the declaration, "I do perform work for clients of the Firm that are located in California but the work is performed entirely within the state of New York."  *Id.* ¶ 5.  Defendant Perlman states that the work she performed for Plaintiff MabVax "was performed from the Firm's New York office."  *Id.* ¶ 7.

Defendant Kesner provides his declaration.  (Kesner Decl., ECF No. 28-2 at 2). Defendant Kesner states in the declaration, "I was admitted pro hac vice in the United States District Court for the Northern District of California in one case on behalf of a non-California client to merely enforce a settlement agreement."  *Id.* ¶ 9.  Defendant Kesner states, "From April 2015 through May 2018, while practicing law at the Sichenzia Firm, I represented Plaintiff MabVax . . . a Delaware corporation with its principal office in San Diego, California."  *Id.* ¶ 10.  Defendant Kesner states that he met with representatives of Plaintiff MabVax three times in California.  *Id.* ¶ 13.  The declaration provides:

> 14. The first two meetings were in March 2015 when I was attending the Roth Conference in Dana Point, California. During the conference, I was introduced to two individuals associated with MabVax and we talked for about one hour over lunch. At the time, I was representing an investment bank and an investor who were interested in MabVax and who had set up the lunch meeting to introduce me to MabVax. . . . I did not travel to California for the purpose of meeting with MabVax and this was the first time I had met any representatives of MabVax. The second time I met with representatives from MabVax in California was shortly after the first meeting. . . . My clients had decided to pursue an investment in MabVax and I met with two representatives from MabVax to discuss terms. . . . The third time I met with MabVax representatives in California was approximately one year after MabVax engaged the [Firm], but my meeting with them was social over lunch while I was again in California attending a Roth conference which MabVax also attended . . . . The third meeting was not business related and was for the purpose of introducing MabVax to a third-party as a potential service provider and lasted roughly one hour.
>
> 15. About three weeks after my second meeting with MabVax, MabVax engaged the [Firm] for the specified purposes set forth in an initial engagement letter signed with Plaintiff . . . . During the course of the [Firm's] representation, MabVax signed several engagement agreements with the

[Firm]. The engagement agreements between MabVax and the [Firm] were negotiated and executed remotely. While I was in New York, I discussed the terms of the engagement agreements over the telephone with David Hansen . . . and Gregory Hansen . . . who were in California, and by email. I emailed the engagement agreements to them and they emailed signed copies back to me. . . .

25. In 2017, MabVax failed to pay attorneys' fees owing to the [Firm].

26. On July 31, 2017, MabVax and the [Firm] entered into a Fee Conversion Agreement pursuant to which the [Firm] agreed to a partial reduction in fees in exchange for 46,574 shares of MabVax's common stock as payment.

*Id.* ¶¶ 13–15, 25–26. The declaration is supported by a March 2015 engagement letter that has signature lines for Hansen and Defendant Kesner and shows Hansen's signature. (ECF No. 28-3 at 4). The engagement letter states, "We look forward to representing [Plaintiff] in connection with general corporate and securities matters, including matters related to ongoing SEC reporting." *Id.* at 1. In addition, the declaration is supported by a July 31, 2017 document titled "Fee Conversion Agreement" that has signature lines for Hansen and Defendant Kesner and shows Hansen's signature. (ECF No. 28-4 at 4). The Fee Conversion Agreement provides:

WHEREAS, as of May 19, 2017, [Plaintiff] owed $80,000 in legal fees to [the Firm] for work relating to the [Plaintiff's] public offering of common stock and Series G Preferred Stock (the "Outstanding Fees");

WHEREAS, [Plaintiff] wishes to satisfy the Outstanding Fees due to [the Firm];

NOW, THEREFORE, in consideration of the foregoing promises, [Plaintiff] and [the Firm] hereby agree as follows:

1. On the Effective Date, [Plaintiff] shall issue to [the Firm] 46,574 shares of common stock (the "Shares").

2. Effective upon the issuance of the Shares by [Plaintiff] to [the Firm], [the Firm] shall, as a courtesy, write-off and forgive the remainder of the Outstanding Fees.

*Id.* at 1.

Plaintiff provides the declaration of David Hansen, Plaintiff's chief executive officer. (Hansen Decl. ¶ 2, ECF No. 29-1). Hansen states in the declaration that Plaintiff "is, and at all relevant times was, headquartered in San Diego, California" and that Plaintiff "does not maintain offices in any state other than California." *Id.* ¶ 3. Hansen states that he "attended the Roth Capital Partners Growth Stock Conference in Laguna Niguel, California," with Plaintiff's chief financial officer, Gregory Hanson. *Id.* ¶ 4. Hansen states than he and Hanson met with John Stetson to discuss a possible investment by Stetson and other investors. *Id.* ¶ 4. Hansen states, "Mr. Stetson informed us that, as a condition of the investment, [Plaintiff] would be required to retain the [Firm] and its partner, [Defendant] Kesner." *Id.* ¶ 5. Hansen states that Stetson introduced Hansen and Hanson to Defendant Kesner at the conference. *Id.* ¶ 6. Hansen states that Hansen and Hanson later met alone with Defendant Kesner. *Id.* Hansen states that on March 12, 2015, shortly after meeting Defendant Kesner, "we received a formal term sheet from Mr. Stetson." *Id.* ¶ 7. The declaration is supported by an exhibit of a document titled "Term Sheet for Investment and Recapitalization." (Ex. A to Hansen Decl., ECF No. 29-1 at 6). The document states,

> The purpose of this letter is to set forth the indicative terms pursuant to which [Plaintiff] . . . would recapitalize via an equity investment and exchange of outstanding Preferred stock and Warrants. The terms and conditions set forth herein are for discussion with HS Contrarian Investments, LLC and certain other securityholders . . . and are non-binding unless and until a definitive agreement outlining all of the terms has been mutually signed. This letter . . . represents the good faith intentions of the Parties to enter into a definitive binding agreement representing the terms herein; and this letter does not constitute an offer or contract.

*Id.* The document contains a "Counsel" section, which states:

> Following closing, [Plaintiff] will engage the firm with which Harvey Kesner, Esq. is associated, as [Plaintiff's] counsel (the "Firm") for corporate securities for a minimum 12 months period following closing; [Plaintiff] acknowledges the Firm is presently counsel to the lead investor, which shall provide the Firm customary conflict waivers to be provided by the investors, as requested.

*Id.* at 7–8.  The document is dated March 13, 2015 and signed by Hansen and Stetson.  *Id.* at 8.[2]

The record shows Defendant Kesner traveled to a conference in California, during which Defendant Kesner met representatives of Plaintiff, after which Plaintiff engaged the services of the Firm and Defendant Kesner.  Defendant Kesner took measures to develop the relationship with Plaintiff, whose principal place of business is in California.  Defendant Kesner sent Plaintiff the engagement agreement, which indicates a space for Kesner's signature, and which expressly references "ongoing" services to Plaintiff, whose principal place of business is in California.  *See* ECF No. 28-3 at 1.  The record demonstrates that Defendant Kesner has "substantial connection" with California that are not "random, fortuitous, or attenuated," such that Defendant Kesner purposefully availed himself of the "privilege of conducting activities" in California.  *See Sher*, 911 F.2d at 1363 (quoting *Burger King*, 471 U.S. at 479).  The record in this case shows the client relationship began under different circumstances than *Sher*, "where the law firm is solicited in its home state and takes no affirmative action to promote business within the forum state."  *See id.*  Defendant Kesner's actions fall within the ordinary scope of law firm business and are imputed to the Firm in this case.  *See id.* at 1366 ("[W]hile each partner

_____

[2] The Sichenzia Defendants move to strike portions of the Hansen Declaration and Plaintiff's response in opposition to the motion to dismiss. (ECF No. 30-1 at 2).  The Sichenzia Defendants assert that the Hansen Declaration includes nonjurisdictional facts and that Plaintiff's response references facts that lack foundation and relevance.  The Sichenzia Defendants contend that such facts require the Court to treat Defendants' 12(b)(6) motion as a motion for summary judgment.  Plaintiff contends that the challenged portions of the Hansen Declaration and response are properly considered in the jurisdictional analysis.  The Court finds that the Sichenzia Defendants fail to set forth proper grounds to grant the motion to strike.  *See Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (stating that"[t]he court may consider evidence presented in affidavits to assist it in its determination" of personal jurisdiction), *abrogated on other grounds as recognized by Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017); *see also Neveau v. City of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005) (noting that motions to strike are generally disfavored); *S.E.C. v. Sands*, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995) ("[C]ourts are reluctant to determine disputed or substantial questions of law on a motion to strike.").

is generally an agent of the partnership for the purpose of its business, he is not ordinarily an agent of his partners. Thus, a partner's actions may be imputed to the partnership for the purpose of establishing minimum contacts, but ordinarily may not be imputed to the other partners."). In addition, the Firm is the beneficiary of an agreement that secures compensation for legal services with ownership of property based in California—specifically, ownership of shares in Plaintiff—and supports purposeful availment by the Firm in this case. *See id.* (concluding that securing partnership's legal fees with a deed of trust on client's California home demonstrated purposeful availment by the partnership). In this case, the "course of dealing," including the calls and emails, the trips and the fee conversion agreement, demonstrates that the partnership "invok[ed] the benefits and protections" of the laws of California for purposes of jurisdiction. *See id.* at 1363–64.

The jurisdictional analysis for the individual Defendants does not require the Court to distinguish New York and California agency and partnership law. *See Sher*, 911 F.2d at 1365 ("Liability and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum.") (citing *Shaffer v. Heitner*, 433 U.S. 186, 204 & n.19 (1977)); *see also Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017) ("If an agency theory of imputable contacts survives *Daimler* in the context of specific jurisdiction, then *Walden*'s directive that contacts must be directly between the defendant and the forum is inapposite, because imputing an in-state entity's contacts to the defendant would necessarily establish that direct connection.") (citing *Daimler AG v. Bauman*, 571 U.S. 117 (2014), then citing *Walden*, 571 U.S. at 286). The facts alleging wrongful conduct by the individual Sichenzia Defendants occurred after the client relationship with Plaintiff MabVax was already established and constituted "normal incidents of th[e] representation" that "by themselves, do not establish purposeful availment." *See id.* at 1362. Plaintiff fails to make a "prima

facie showing of jurisdictional facts" demonstrating purposeful availment on the part of any Defendant other than the Firm and Defendant Kesner.  *See Mavrix*, 647 F.3d at 1223.

**B. Purposeful Direction**

The Court does not analyze purposeful direction as to the Firm or Defendant Kesner in light of the purposeful availment finding as to the Firm and Defendant Kesner.  *See Axiom*, 874 F.3d at 1068 ("[T]he defendant must either "purposefully direct his activities" toward the forum *or* "purposefully avail[ ] himself of the privileges of conducting activities in the forum . . . .") (emphasis added).  The Court analyzes purposeful direction only as to the individual Sichenzia Defendants.

The Sichenzia Defendants assert that Plaintiff MabVax fails to show harm suffered in California.  The Sichenzia Defendants contend that Defendant Kesner's actions can be imputed to the Firm and not to the individual Sichenzia Defendants.  The Sichenzia Defendants contend that Plaintiff MabVax does not allege sufficient facts to demonstrate that any individual Sichenzia Defendant committed an intentional tort or act in California, expressly aimed wrongful conduct at California, or knowingly caused harm that would be suffered in California.

Plaintiff MabVax contends that the purposeful direction analysis governs personal jurisdiction in this case rather than purposeful availment.  Plaintiff MabVax asserts that the Complaint alleges that Defendants committed intentional torts, satisfying the intentional act requirement.  Plaintiff MabVax asserts, "No one provides legal services accidentally." (ECF No. 29 at 32).  Plaintiff MabVax contends that the express aiming requirement can be satisfied by alleging that Defendants committed intentional torts against a known resident of California, and that "[n]othing in *Walden v. Fiore*, 134 S. Ct. 1115 (2014) changes this result."  (ECF No. 29 at 33).  Plaintiff MabVax contends that the causation requirement is satisfied because a corporation incurs economic loss in the forum of its

principal place of business, and Plaintiff MabVax's principal place of business is in California.

To satisfy the purposeful direction test, "[t]he defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom*, 874 F.3d at 1068 (quotation omitted). Courts "construe 'intent' in the context of the 'intentional act' test as referring to an intent to perform an actual, physical act in the real world." *Schwarzenegger*, 374 F.3d at 806. In this case, Plaintiff MabVax alleges that all Defendants participated in failing to timely and fully disclose conflicts of interest, disclosing confidential communications, or providing improper legal advice. Plaintiff MabVax has adequately alleged an intentional act as to all Defendants.

The express aiming prong of purposeful direction requires a plaintiff to show an intentional act aimed at California. *Schwarzenegger*, 374 F.3d at 806. A plaintiff must demonstrate that California is the "focal point" of both the claims and the harm suffered. *Axiom*, 874 F.3d at 1070–71 (quoting *Walden*, 571 U.S. at 288). A plaintiff must demonstrate that "the effects caused by the defendants' [conduct]—i.e., the injury to the plaintiff[] . . . —connected the defendants' conduct to California, not just to a plaintiff who lived there." *Walden*, 571 U.S. at 288. Courts "must focus on the defendant's contacts with the forum state, not the defendant's contacts with a resident of the forum." *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015). A plaintiff does not demonstrate express aiming if "none of [the] challenged conduct ha[s] anything to do with California itself." *Id.* at 1215 (original alterations omitted). A plaintiff can no longer demonstrate hat a defendant expressly aimed at the forum state by alleging only that the defendant knew of the plaintiff's forum connections and could have reasonably foreseen harm in that forum. *Axiom*, 874 F.3d at 1069–70 ("In *Walden*, the Supreme Court rejected our conclusion that the defendants' "knowledge of [the plaintiffs'] 'strong forum connections,'" plus the

30

"foreseeable harm" the plaintiffs suffered in the forum, comprised sufficient minimum contacts. . . .").

The record shows that in February and March 2018, Defendant Gregory Sichenzia sent and received emails with other partners at the Firm in response to critical news stories and possible lawsuits.  The record shows that in April 2015, Defendant Tara Guarneri-Ferrara traveled to Plaintiff MabVax's headquarters after Plaintiff MabVax had engaged the Firm as counsel.  The Complaint alleges that Guarneri-Ferrara was involved in communications related to improper disclosure and use of Plaintiff MabVax's confidential information regarding the equity position of the Investors.  The Court finds that the challenged conduct of Defendants Sichenzia and Guarneri-Ferrara is connected "to a plaintiff who live[s] [in California]."  *See Walden*, 571 U.S. at 288.  Plaintiff MabVax fails to demonstrate that Sichenzia's or Guarneri-Ferrara's "challenged conduct ha[s] anything to do with California itself."  *See Picot*, 780 F.3d at 1215 (original alterations omitted). The Court need not determine whether specific personal jurisdiction as to Defendants Sichenzia and Guarneri-Ferrara is lacking for alternative reasons.  *See Picot*, 780 F.3d at 1215 n.4 ("Because Picot has not established the second prong of our purposeful direction test, we need not address the third prong.").

The Complaint alleges that in February and March 2018, Defendant Michael Ference and Defendant Marc Ross sent and received emails with other partners at the Firm in response to critical news stories and possible lawsuits.  The Complaint alleges that Ference is an Investor.  The Complaint alleges that in April 2018, Ross sent and received emails with other Firm employees in response to Plaintiff MabVax's SEC investigation and conflicts of interest.  The Complaint alleges that in May 2018, Ross advocated that the Firm refuse to meet with Plaintiff MabVax's successor counsel.  The Court finds that the challenged conduct of Defendants Ference and Ross is connected to a plaintiff who lives in California.  Plaintiff MabVax fails to demonstrate that Ference's or Ross's challenged

conduct has anything to do with California itself.  The Court need not determine whether specific personal jurisdiction as to Defendants Ference and Ross is lacking for alternative reasons.

The Complaint alleges that Defendant Thomas Rose was involved in communications related to improper use of Plaintiff MabVax's confidential information regarding the equity position of the Investors.  The Complaint alleges that in March 2018, Rose sent and received emails with other partners at the Firm in response to critical news stories and possible lawsuits.  The Complaint alleges that in April 2018, Rose sent and received emails with other Firm employees in response to Plaintiff MabVax's SEC investigation and conflicts of interest.  The Court finds that the challenged conduct of Defendant Rose is connected to a plaintiff who lives in California.  Plaintiff MabVax fails to demonstrate that Rose's challenged conduct has anything to do with California itself.  The Court need not determine whether specific personal jurisdiction as to Defendant Rose is lacking for alternative reasons.

The Complaint alleges that in April 2018, Defendant Richard Babnick sent and received emails with other Firm employees in response to Plaintiff' MabVax's SEC investigation and conflicts of interest.  The Complaint alleges that Defendant David Manno was involved in communications related to improper use of Plaintiff MabVax's confidential information regarding the equity position of the Investors.  The Complaint alleges that Defendant Avital Perlman sent and received emails in response to regulatory inquiries regarding the identity of Investors.  The Court finds that the challenged conduct of Defendants Babnick, Manno, and Perlman is connected to a plaintiff who lives in California.  Plaintiff MabVax fails to demonstrate that Babnick's, Manno's, or Perlman's challenged conduct has anything to do with California itself.  The Court need not determine whether specific personal jurisdiction as to Defendants Babnick, Manno, and Perlman is lacking for alternative reasons.

18-cv-2494-WQH-AGS

The motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) is granted as to Defendants Gregory Sichenzia, Michael Ference, Tara Guarneri-Ferrara, Marc Ross, Thomas Rose, Richard Babnick, David Manno, and Avital Perlman.  The Court evaluates the remaining two prongs of specific jurisdiction, relatedness and reasonableness, only as to the Firm and Defendant Kesner.

## C. Forum-Related Activities

The Sichenzia Defendants assert that the Firm's contacts did not cause Plaintiff MabVax's alleged injury because the Firm did not initiate the California meetings between Plaintiff MabVax's representatives and Defendant Kesner.  Defendant Kesner asserts that Plaintiff MabVax cannot show that the injuries in this case would not have occurred but for Defendant Kesner's activities in California.  Defendant Kesner asserts that Plaintiff MabVax's claims arise from legal services provided in New York regarding reporting requirements under federal law and Delaware law.  Plaintiff MabVax asserts that this action arises from all of the alleged jurisdictional contacts by Defendants.  Plaintiff MabVax asserts that the harms suffered in this case would not have occurred but for the conduct of Defendants.

The plaintiff has the burden to make a prima facie showing that the claims "arise[] out of or relate[] to the defendant's forum-related activities." *Picot*, 780 F.3d at 1211. Courts apply the "but for" test, which requires a plaintiff to demonstrate "that [the plaintiff] would not have suffered an injury 'but for' [the defendant's] forum-related conduct." *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).

In this case, Plaintiff MabVax's claims generally arise from the alleged financial injuries caused by the wrongful conduct of the Firm and Defendant Kesner in the course of the representation.  Plaintiff MabVax alleges that the Firm and Defendant Kesner provided improper legal advice regarding Plaintiff MabVax's reporting obligations with respect to the Investors, including Defendant Kesner.  Plaintiff MabVax alleges that Firm

partners and Defendant Kesner obtained Plaintiff MabVax's confidential information in the course of the representation and improperly disclosed or otherwise used that information.  The Court concludes that Plaintiff MabVax's causes of action arise out of or relate to the Firm's and Defendant Kesner's forum-related activities.  Plaintiff MabVax has carried the burden to satisfy the first two prongs of personal jurisdiction analysis. Accordingly, the burden now shifts to the Firm and Defendant Kesner to demonstrate that the exercise of jurisdiction would not be reasonable.  *See id.* at 1060.

### D. Reasonableness

"The final requirement for specific jurisdiction . . . is reasonableness. For jurisdiction to be reasonable, it must comport with fair play and substantial justice." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000), *overruled in part on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006), *as recognized by Delphix Corp. v. Embarcadero Techs., Inc.*, 749 F. App'x 502, 506 (9th Cir. 2018).  The defendant bears the burden to demonstrate unreasonableness and must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. Courts consider the following factors when evaluating reasonableness:

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

*Bancroft*, 223 F.3d at 1088 (citing *Burger King*, 471 U.S. at 476–77).  "None of the factors is dispositive in itself; instead, [courts] must balance all seven." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993).  The seventh factor, "[w]hether another

34

reasonable forum exists[,] becomes an issue only when the forum state is shown to be unreasonable." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1201 (9th Cir. 1988).

The Court concludes that the Firm and Defendant Kesner purposefully availed themselves of the California forum by Defendant Kesner developing a relationship with a California client while attending a conference in California, and by the Firm's Fee Conversion Agreement. This factor weighs in favor of a determination that the exercise of personal jurisdiction is reasonable.

With respect to the second factor, the Sichenzia Defendants assert that litigation in California would be a substantial burden because the Firm is headquartered in New York and the Firm would be forced to incur considerable expenses. Defendant Kesner asserts that all Defendants work in New York and reside in New York or New Jersey, except Defendant Kesner, who resides in Florida and travels often to New York where he is licensed and practices. Defendant Kesner asserts that all documents and records regarding the legal services Plaintiff MabVax was provided are in New York at the Firm's office. Plaintiff asserts that "[a] plane flight from New York to San Diego is not enough" to demonstrate a substantial burden or an inconvenience that violates due process. Defendants have not established that they will experience a substantial burden at having to litigate in California. *See Menken*, 503 F.3d at 1060 (quoting *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004)) ("Nevertheless, with the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past."); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d at 1316, 1323 (9th Cir. 1998) ("A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.") (quotation omitted). The Court concludes that this factor is neutral.

With respect to the third and fourth factors, the Sichenzia Defendants assert that California has little interest in this controversy because the lawyers in this case are licensed in New York and were hired to make SEC filings in New York.  Defendant Kesner asserts that New York courts have a superior interest to California because the conduct at issue occurred in New York by New York attorneys, and because this case requires application of New York law.  Defendant Kesner asserts that litigating this case in California could cause inconsistent outcomes based on New York SEC proceedings.  Defendant Kesner asserts that California has no interest in protecting its citizens in this case because Plaintiff MabVax developed treatments in New York and hired New York counsel for New York legal services.  Plaintiff MabVax asserts that California law applies.  Plaintiff MabVax contends that the any conflict between California and New York law would be resolved through choice of law rules, and creates no jurisdictional sovereignty interest conflict even if New York law applies.  Plaintiff MabVax asserts that California has a strong interest in providing redress for its injured citizens.  Although New York has some interest in regulating the conduct of its attorneys, Plaintiff MabVax seeks to bring common law claims and this case will be litigated in federal court regardless of forum state. Further, California has an interest in the adjudication of a case arising from the alleged malpractice that harmed a California business.  These factors weigh in favor of finding that the exercise of personal jurisdiction in a California forum is reasonable.

With respect to the fifth factor, the Sichenzia Defendants assert that the Southern District of New York will provide the most efficient judicial resolution of this action because New York law applies in this case and the Southern District of New York has 43 district judges.  Defendant Kesner asserts that numerous potential witnesses reside in New York, including scientists and directors of Plaintiff, regulators, and other organizations involved in contracts with Plaintiffs.  Defendant Kesner asserts that all of Defendants' documents and records are located in New York, as is Plaintiff MabVax's successor

counsel.  Plaintiff MabVax asserts that there are as many critical witnesses in California, including Plaintiff MabVax's officers and employees, as in New York, New Jersey, or Florida.  The "most efficient judicial resolution of the controversy" factor "concerns the efficiency of the forum, particularly where the witnesses and evidence are likely to be located."  *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995).  Given that witnesses and evidence relating to this matter are likely located in California, New York, New Jersey, and Florida, this factor does not weigh in favor of either party.

With respect to the sixth factor, Defendant Kesner asserts that New York is equally convenient to Plaintiff MabVax as California.  Defendant Kesner asserts that Plaintiff MabVax's core technology was developed and licensed in New York and that Plaintiff MabVax's executives frequently travel to and conduct business in New York.  Plaintiff MabVax asserts that it would be more convenient to litigate in California.  For courts "in this circuit, the plaintiff's convenience is not of paramount importance."  *Dole Foods Co., Inc. v. Watts*, 303 F.3d 1104, 1116 (9th Cir. 2002); *see Panavision*, 141 F.3d at 1324 ("In evaluating the convenience and effectiveness of relief for the plaintiff, we have given little weight to the plaintiff's inconvenience.").  This factor does not weigh in favor of either party.

The Court concludes that Defendant Kesner and the Firm have not satisfied their burden to present a compelling case that the exercise of personal jurisdiction in the California forum would be unreasonable.  *See Panavision*, 131 F.3d at 1324 (concluding that the defendant "failed to present a compelling case that the district court's exercise of jurisdiction in California would be unreasonable."); *Menken*, 503 F.3d at 1061 ("Weighing these seven considerations, the balance of factors does not favor Tomerlin. . . . On balance, Tomerlin has not presented a compelling case that the exercise of jurisdiction would not comport with fair play and substantial justice and would thus be unreasonable."); *Ballard v. Savage*, 65 F.3d 1495, 1502 (9th Cir. 1995) (describing the "heavy burden of presenting

1   a 'compelling case' against jurisdiction").  The motion to dismiss for lack of personal

2   jurisdiction under Rule 12(b)(2) is denied as to Defendant Sichenzia Ross Ference LLP

3   and Defendant Kesner.

4   **IV.   VENUE**

5          The Firm and Defendant Kesner request that the Court transfer this case to the

6   Southern District of New York under 28 U.S.C. § 1404.  The Firm contends that the

7   following factors favor transfer: (1) the retainer agreement was negotiated and executed

8   remotely over telephone and email; (2) New York courts are well versed in securities law;

9   (4, 5) all individual attorneys are subject to New York jurisdiction and New York has a

10  strong interest in the conducts of its attorneys; (6) litigation in New York would be less

11  costly for defense witnesses; and (8) all work was performed in New York and all

12  documents are located in New York, and all defense witnesses are located on the East

13  Coast.  Defendant Kesner contends that venue is proper in New York because the legal

14  services underlying this action were rendered in New York.  Defendant Kesner further

15  contends that the following factors weigh in favor of transfer: (1) the engagement and Fee

16  Conversion agreements were negotiated and executed remotely over telephone and email;

17  (2) New York courts are extremely knowledgeable and experienced with respect to federal

18  securities law issues relevant to this case, and the SEC chose to file an action against certain

19  of Plaintiff MabVax's investors in New York; (3) the legal services at issue were provided

20  to Plaintiff MabVax outside California, reducing the importance of Plaintiff MabVax's

21  choice of forum; (4, 5) Defendant Kesner lacks minimum contacts with California, Plaintiff

22  is a Delaware corporation whose only California contacts are Plaintiff MabVax's

23  headquarters and the introduction to Defendant Kesner in California; (6) all Defendants

24  would incur significant expense to travel to California to travel; and (8) Plaintiff MabVax's

25  executives frequently travel to and conduct business in New York, and most documentary

26  evidence is in New York.

27

28

Plaintiff MabVax contends that Defendants have not made the requisite strong showing that the convenience of the parties and the interests of justice strongly favor a transfer of venue to the Southern District of New York.  Plaintiff MabVax contends that a strong showing has not been made with respect to the following factors: (1) the negotiations with the Investors who required Plaintiff MabVax to retain the Firm and Defendant Kesner occurred in California; (2) California law governs and, if New York law applied, federal courts routinely apply the law of nonforum states; (3) great weight is afforded to a plaintiff's choice of forum, particularly when, as in this case, the plaintiff sues in the home forum and not in a representative capacity; (4) both parties have significant California contacts because Defendants entered into a contract with a California business; (5) all of Defendants' California contacts relate to Plaintiff MabVax's causes of action in this case; (6) it would merely shift costs to litigate in California because Plaintiff's key witnesses are its senior executives, who are located in California; (8) Defendants have not shown that any documentary proof cannot be digitized or electronically transmitted to this district.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation omitted).  The statute requires a court to consider the convenience of the parties and witnesses and the interests of justice.  *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000).  Under § 1404(a), a district court may consider:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of

1    compulsory process to compel attendance of unwilling non-party witnesses,
2    and (8) the ease of access to sources of proof.

3   *Id.* at 498–99.  Relevant public policy is also a significant factor.  *Id.* at 499.  The party

4   moving for transfer pursuant to § 1404(a) bears the burden of showing that another forum

5   is more convenient and serves the interest of justice.  *See id.*  "The defendant must make a

6   strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."

7   *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  "Rather

8   than relying on vague generalizations of inconvenience, the moving party must

9   demonstrate, through affidavits or declarations containing admissible evidence, who the

10   key witnesses will be and what their testimony will generally include."  *Cochran v. NYP*

11   *Holdings, Inc.*, 58 F. Supp. 2d 1113, 1119 (C.D. Cal. 1998) (citing *Commodity Futures*

12   *Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)).

13        Plaintiff MabVax's choice of forum is entitled to some deference.  *See id.*; *see also*

14   *Cung Le v. Zuffa, LLC*, 108 F. Supp. 3d 768, 779 (N.D. Cal. 2015) ("As already noted, the

15   majority of the named plaintiffs do not reside in this district, rendering their choice of forum

16   less significant.").  Plaintiff MabVax chose to bring this case in California, the state of

17   Plaintiff MabVax's principal place of business.  The causes of action in this litigation arise

18   from Plaintiff MabVax's financial injuries.  Based on the representations made by both

19   parties, witness travel will be required regardless of where this litigation occurs because

20   witnesses reside in California, New York, New Jersey, and Florida.  *See Decker Coal Co.*,

21   805 F.2d at 843 (affirming denial of a motion to transfer where "[t]he transfer would merely

22   shift rather than eliminate the inconvenience").  Any difficulty the Firm and Defendant

23   Kesner may face in compelling the Firm's own partners and employees to testify in

24   California is not a factor that weighs heavily in favor of transfer.  *See STX, Inc. v. Trik Stik,*

25   *Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1988) ("[D]efendant's claim that defense

26   witnesses could not be expected to appear at trial must be discounted since at least four of

27

28

the six witnesses are defendant's employees whom defendant can compel to testify."). Defendants provide the declarations of the individual Defendants in this case that state that New York is a more convenient forum than California. Defendants have shown that New York is a more convenient forum than California for some potential witnesses. Defendants have not set forth the identity or anticipated testimony of their key witnesses. *See, e.g.*, *Amini Innovation Corp. v. JS Imports, Inc.*, 497 F. Supp. 2d 1093, 1111 (C.D. Cal. 2007) ("The convenience of witnesses is often the most important factor in determining whether a transfer pursuant to § 1404 is appropriate."); *Barnstormers, Inc. v. Wing Walkers, LLC*, No. 09CV2367 BEN (RBB), 2010 WL 2754249, at *2 (S.D. Cal. July 9, 2010). Relevant business and legal records may be located in multiple states, including California, and Defendants have not shown any anticipated difficulty related to the electronic transfer of these records. The ease of access to key sources of proof is neutral.

The forum's familiarity with the governing law is neutral and does not weigh in favor of transfer under the facts of this case. Plaintiff MabVax contends that California law applies and Defendants contend that New York law applies; regardless, Defendants fail to demonstrate that this Court would face difficulty in applying New York law to the facts of this case.

After weighing the § 1404(a) factors under the circumstances of this case, the Court concludes that Defendants have not made "a strong showing of inconvenience . . . to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co.*, 805 F.2d at 843. The motion to transfer pursuant to § 1404(a) is denied.

## V.    ADEQUACY OF PLEADINGS

### A. Negligent Professional Practice, Breach of Fiduciary Duty, Breach of Contract

The Firm contends that Plaintiff MabVax fails to plead damages because no alleged facts show that misleading successor counsel, informing the Investors of a meeting with

successor counsel, or failing to disclose conflicts of interest resulted in any damages.  The Firm asserts that the allegations of the Complaint are sufficient to infer only a risk that the alleged misrepresentations of Investor-related reporting requirements could violate securities laws.  The Firm contends that Plaintiff MabVax fails to plead causation because the allegations in the Complaint demonstrate that Plaintiff MabVax's delisting from Nasdaq and putative class action was caused by Plaintiff MabVax voluntarily disclaiming reliance on prior SEC filings and petitioning the Delaware Chancery Court to validate corporate acts.  The Firm contends that under New York law, Plaintiff MabVax's breach of fiduciary duty claim is subject to dismissal for relying on the same facts and damages as the negligent professional practice claim. The Firm contends that the elements of breach of contract are substantially the same under California and New York law.  The Firm asserts that Plaintiff MabVax fails to allege which specific contract terms were breached and premises the breach of contract claim on the same allegations as the breach of fiduciary duty and negligence claims.  The Firm contends that under New York law, Plaintiff MabVax's breach of contract claim is subject to dismissal for relying on the same facts as the negligent professional practice claim.

Plaintiff MabVax contends that causation and damages are adequately pled with the allegations that Kesner's deficient advice caused Plaintiff MabVax to be unable to rely on the share count and weighted average number of shares used in earnings-per-share calculations from previous SEC filings.  Plaintiff MabVax asserts that the inability to rely on previously reported information required Plaintiff MabVax to publicly disclaim reliance on the affected filings, which caused the Nasdaq delisting, multiple stockholder complaints, and an inability to raise capital.  Plaintiff MabVax asserts that the inability to rely on the previously reported information left Plaintiff MabVax with no choice but to bring a Delaware Chancery Court action to validate prior stock issuances.  Plaintiff MabVax further contends that causation and damages are adequately pled with allegations

18-cv-2494-WQH-AGS

that Kesner's disclosure and use of confidential information led to the Investors interfering with Plaintiff MabVax's ability to obtain investment bank financing.  Plaintiff MabVax asserts that the failure to disclose conflicts of interest wasted money and prevented competent counsel from assisting Plaintiff MabVax with the SEC investigation.  Plaintiff MabVax contends that under California law the breach of fiduciary duty claim is distinct from the professional negligence claim.  Plaintiff MabVax contends that New York law permits a breach of fiduciary claim and a malpractice claim because the Complaint alleges incompetence and outright disloyalty.  Plaintiff MabVax contends that the allegations supporting the malpractice and breach of fiduciary duty claims also support the breach of contract claim.

"The elements of a cause of action for attorney malpractice under California law are: (1) the duty to use such skill, prudence and diligence as members of the profession commonly possess; (2) breach of that duty; (3) a proximate connection between the breach and the injury; and (4) actual loss or damage." *Loyd v. Paine Webber, Inc.*, 208 F.3d 755, 759 (9th Cir. 2000) (citing *Wiley v. Cty. of San Diego*, 966 P.2d 983, 985 (Cal. 1998)).  A plaintiff establishes causation by showing that the defendant's conduct was a substantial factor in bringing about the harm to the plaintiff.  *Mosier v. Stonefield Josephson, Inc.*, 815 F.3d 1161, 1167 (9th Cir. 2016) (quoting *Williams v. Wraxall*, 39 Cal. Rptr. 2d 658, 665 (Ct. App. 1995)).  "The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, breach of fiduciary duty, and damages." *Knutson v. Foster*, 236 Cal. Rptr. 3d 473, 486 (Ct. App. 2018) (quoting *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011)).  "A cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 70 Cal. Rptr. 3d 667, 679 (Ct. App. 2008) (citation omitted).

In this case, the Court finds that Plaintiff MabVax alleges facts supporting malpractice and breach of fiduciary duty claims under either California or New York law. *See Knutson*, 236 Cal. Rptr. 3d at 486 (noting that under California law, "breach of fiduciary duty . . . [i]s a species of tort distinct from causes of action for professional negligence"); *Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*, 56 A.D.3d 1, 9 (N.Y. App. Div. 2008) ("Plaintiff's . . . breach of fiduciary duty claim relates to defendant's actions in helping [a competitor] set up a competing business, whereas the malpractice claim relates to its handling of the claims as plaintiff's claims counsel. Therefore, the two claims are not premised on the same facts and seeking identical relief . . . and both can be asserted."). The Complaint alleges that Defendants had conflicts of interest with respect to the Investors. The Complaint alleges that Defendants disclosed confidential communications to the Investors without consent. The engagement letter addresses confidentiality among the provisions on waiving conflicts of interest: "Such waiver does not result in any waiver of the protections that are afforded to you or to the Company with regard to attorney client communications with the Firm. Such communications will remain confidential and will not be disclosed to any third party without consent." (ECF No. 28-3 at 2). Plaintiff MabVax adequately alleges facts to bring both malpractice and breach of contract claims under either California or New York law. *See Stanley v. Richmond*, 41 Cal. Rptr. 2d 768, 780 n.7 (1995) ("The proof that Richmond violated the Rules of Professional Conduct and other fiduciary duties owed to her client is, thus, sufficient to support a claim that Richmond's conduct amounted to a breach of contract as well."); *Saveca v. Reilly*, 111 A.D.2d 493, 494–95 (N.Y. App. Div. 1985) ("An action for breach of contract may be maintained in attorney-client agreements only when there is a promise to perform and no subsequent performance, or when the attorney has explicitly undertaken to discharge a specific task and then failed to do so . . . .") (quotation and alteration omitted). The Firm fails to identify a conflict between California and New

York law on the claims for negligent professional practice, breach of fiduciary duty, or breach of contract. The Court need not further address conflict of law issues. *See Rosenthal v. Fonda*, 862 F.2d 1398, 1400 (9th Cir. 1988) ("[T]he substantive law of each state must be examined to assure that the laws differ as applied to this transaction.").

The Complaint alleges that the Firm and Defendant Kesner were engaged to provide Plaintiff MabVax with legal representation. The facts alleged support a plausible inference that employees and partners of the Firm failed to adequately disclose conflicts of interest regarding Plaintiff MabVax's representation. The facts alleged support a plausible inference that the Firm and Defendant Kesner were involved in conveying Plaintiff MabVax's confidential communications to the Investors. The facts alleged support a plausible inference that Defendant Kesner provided improper legal advice on SEC reporting requirements with respect to the Investors. The facts alleged support a plausible inference that the alleged conduct caused Plaintiff MabVax difficulties related to the SEC investigation, publicly disclaiming reliance on previous SEC reports, and raising capital. The Complaint alleges sufficient facts to demonstrate plausible claims for relief with respect to Plaintiff MabVax's negligent professional practice, breach of fiduciary duty, and breach of contract claims.

## B. Restitution for Unjust Enrichment

The Firm contends that Plaintiff MabVax fails to plead an unjust enrichment claim because the allegations that the Firm's retainer agreement was procured by fraud do not satisfy Rule 9(b). The Firm contends that under California law, Plaintiff MabVax's unjust enrichment claim is subject to dismissal for relying on the same alleged conduct as the negligent professional practice, breach of fiduciary duty, and breach of contract claims.

Plaintiff MabVax contends that the Firm's failure to fully disclose the conflicts of interest at issue in this case voids any contract between Plaintiff and the Firm, permitting

an unjust enrichment claim.  Plaintiff MabVax asserts that payments of legal fees benefitted the partners of the Firm.

California law provides no "standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (first quoting *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 699 (Ct. App. 2010), then quoting *Jogani v. Superior Court*, 81 Cal. Rptr. 3d 503, 511 (Ct. App. 2008)).  However, "[w]hen a plaintiff alleges unjust enrichment, a court may "construe the cause of action as a quasi-contract claim seeking restitution." *Id.* ("[U]njust enrichment and restitution . . . describe the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.' . . . The return of that benefit is the remedy 'typically sought in a quasi-contract cause of action.' . . .") (first quoting 55 Cal. Jur. 3d Restitution § 2, then quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 166 Cal. Rptr. 3d 864, 872 (Ct. App. 2014)).  In addition, "as a matter of law, a quasi-contract action for unjust enrichment does not lie where . . . express binding agreements exist and define the parties' rights." *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 114 Cal. Rptr. 2d 109, 125–26 (Ct. App. 2001).[3]

In this case, the facts alleged support a plausible inference that Plaintiff MabVax retained the legal services of the Firm and Defendant Kesner without full knowledge of conflicts of interest, that Defendant Kesner provided improper legal advice, and that the Firm and Defendant Kesner were compensated for legal services.  The Court finds that Plaintiff MabVax states a claim for unjust enrichment.  *See Astiana*, 783 F.3d at 762

---

[3] The Firm identifies no conflict between California and New York law as applied to the unjust enrichment claim.  The Court applies California law.  *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir. 2010) ("The party advocating the application of a foreign state's law bears the burden of identifying the conflict between that state's law and California's law on the issue . . . ."); *Rosenthal*, 862 F.2d at 1400 ("[T]he substantive law of each state must be examined to assure that the laws differ as applied to this transaction.").

("[Plaintiff] alleged . . . [Defendant] had "entic[ed]" plaintiffs to purchase their products through "false and misleading" labeling, and that [Defendant] was 'unjustly enriched' as a result. This straightforward statement is sufficient to state a quasi-contract cause of action.").

### C. Deceit and Fraud

The Firm asserts that Plaintiff MabVax brings the deceit claim against the individual Defendants and the fraud claim against the Firm and Defendant Kesner, and that the two claims are otherwise identical. The Firm contends that the elements of a fraud claim are substantially the same under California and New York law. The Firm contends that Plaintiff MabVax fails to satisfy the pleading requirements of Rule 9(b) because the allegations group Defendants together. The Firm contends that the facts alleged are insufficient to infer that the Defendants had a duty to disclose internal email discussions. The Firm asserts that if there was a duty to disclose, Plaintiff MabVax fails to allege facts sufficient to infer harm from the internal emails regarding conflicts of interest. The Firm contends that Plaintiff MabVax fails to meet pleading requirements by alleging that the Firm and Kesner misrepresented or concealed facts regarding: Defendants' conflicts of interest, Defendants' disclosure of confidential information, and Defendants' advice on reporting requirements for Investors, particularly as the advice pertained to a preferred stock conversion and regulator communications.

Plaintiff MabVax asserts that the Complaint pleads two particularized theories of fraud against the Firm and Defendant Kesner: first, that the Firm and Defendant Kesner induced Plaintiff to retain the representation without fully disclosing Kesner's relationship to the Investors; second, that the Firm and Defendant Kesner knowingly provided false legal advice on reporting requirements for Investors based on Kesner's knowledge and concealment of his relationship with the Investors and Kesner's knowledge of the securities

47

laws.  Plaintiff MabVax contends that causation is adequately pled by alleging that Plaintiff MabVax would not have retained the Firm if the conflicts had been fully disclosed.

The elements of a claim for fraud are: "(1) a misrepresentation, which includes a concealment or nondisclosure; (2) knowledge of the falsity of the misrepresentation, i.e., scienter; (3) intent to induce reliance on the misrepresentation; (4) justifiable reliance; and (5) resulting damages." *Cadlo v. Owens-Illinois, Inc.*, 23 Cal. Rptr. 3d 1, 5 (Ct. App. 2004) (citing *Small v. Fritz Cos., Inc.*, 65 P.3d 1255, 1258 (Cal. 2003)).  "It is well-established in the Ninth Circuit that . . . claims for fraud . . . must meet Rule 9(b)'s particularity requirement." *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003).  Rule 9(b) requires that a complaint "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Rule 9(b) "requires . . . an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quotation omitted); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (noting that averments of fraud must be accompanied by "the who, what, when, where, and how of the misconduct charged") (quotation omitted).

In this case, the Complaint alleges that the Firm and Defendant Kesner were engaged to provide legal representation to Plaintiff MabVax.  The facts alleged support a plausible inference that the Firm and Defendant Kesner failed to adequately disclose conflicts of interest.  The facts alleged support a plausible inference that Defendant Kesner knowingly provided improper legal advice regarding Plaintiff MabVax's SEC reporting requirements for the Investors.  The Court finds that Plaintiff MabVax's allegations state a fraud claim.

## VI.   CONCLUSION

IT IS HEREBY ORDERED that the motion to dismiss for lack of personal jurisdiction filed by the Sichenzia Defendants (ECF No. 27) is GRANTED as to Defendants Richard J. Babnick, Jr, Michael Ference, Tara Guarneri-Ferrara, David B.

Manno, Avital Even-Shoshan Perlman, Thomas Rose, Marc Ross, and Gregory Sichenzia, and DENIED as to Defendant Sichenzia Ross Ference LLP.  The motion to dismiss for lack of personal jurisdiction filed by Defendant Harvey Kesner is DENIED.  (ECF No. 28). The Complaint is DISMISSED for lack of personal jurisdiction against all Defendants except Defendant Sichenzia Ross Ference LLP and Defendant Kesner.

IT IS FURTHER ORDERED that the motion to transfer venue filed by Defendant Sichenzia Ross Ference LLP (ECF No. 27) and the motion to transfer venue filed by Defendant Kesner (ECF No. 28) are DENIED.

IT IS FURTHER ORDERED that the motion to dismiss for failure to state a claim and the motion to strike filed by Defendant Sichenzia Ross Ference LLP are DENIED. (ECF No. 27; ECF No. 30-1).

Dated:  May 9, 2019

Hon. William Q. Hayes
United States District Court

18-cv-2494-WQH-AGS