**GORDON REES SCULLY MANSUKHANI, LLP**
JOHN M. PALMERI (*pro hac vice*)
jpalmeri@grsm.com
TAMARA A. SEELMAN (*pro hac vice*)
tseelman@grsm.com
ADRIEN K. ANDERSON (*pro hac vice*)
aanderson@grsm.com
555 Seventeenth Street, Suite 3400
Denver, CO 80202
Telephone: (303) 534-5160
Facsimile: (303) 534-5161

**GORDON REES SCULLY MANSUKHANI, LLP**
MAHA SARAH (SBN: 218981)
msarah@grsm.com
101 W. Broadway, Suite 2000
San Diego, CA  92101
Telephone: (619) 696-6700
Facsimile: (619) 696-7124

Attorneys for Defendant
HARVEY KESNER

Gordon Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA  92101

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MABVAX THERAPEUTICS HOLDINGS, INC. | CASE NO. 3:18-cv-02494-WQH-MSB |
| Plaintiff, | **DEFENDANT HARVEY KESNER'S ANSWER TO COMPLAINT** |
| v. | |
| SICHENZIA ROSS FERENCE LLP (F/K/A SICHENZIA ROSS FERENCE KESNER LLP; F/K/A SICHENZIA ROSS FRIEDMAN FERENCE LLP); HARVEY KESNER and Does 1 through 10, inclusive, | Judge:  The Hon. William Q. Hayes |
| | Trial Date:      None Set |
| Defendants. | |

1

Defendant Harvey Kesner, by and through his attorneys responds to the allegations of the Complaint of Plaintiff Mabvax Therapeutics Holdings, Inc. as follows:

### INTRODUCTORY STATEMENT

Plaintiff has sued Defendants Harvey Kesner ("Kesner") and his prior law firm, Sichenzia Ross Ference Kesner, LLP ("Firm") alleging professional misconduct with respect to their representation of Plaintiff.

In its 122 paragraph strongly-worded complaint, Plaintiff claims Kesner and the Firm compromised Plaintiff in a number of ways that constitute professional misconduct.  The essence of the allegations is that Kesner, who was introduced to Plaintiff through a third-party investor with whom Plaintiff subsequently had a falling out, failed to forge new legal concepts for Plaintiff's SEC filings and handling of preferred stock that would disenfranchise a multitude of independent and disparate investors from their rights as shareholders.  When Kesner and the Firm learned Plaintiff took these actions the Firm promptly resigned.

Plaintiff's claims are highly speculative, alleging in essence that "*had*" Kesner and the Firm properly advised Plaintiff they would have caused Plaintiff to count up to 69 independent investors as a single "group" for SEC reporting purposes, also preventing voting, conversion or reporting their individual preferred stock holdings as separate investors. Plaintiff would have had Kesner and the Firm advise it - against all legal precedent and common sense - that its SEC reports should have disclosed the existence of a "group".  In fact, each and every contract specifically provides to the contrary as does decades of legal precedent and each and every SEC filing prior to and subsequent to Kesner and the Firm's engagement.

Plaintiff's management sought to entrench themselves through a concocted new "rule" so that 69 investors who invested over $30 million could never assert more than 4.9% voting over Plaintiff when they began to verbalize displeasure

with management's performance.  Investors have since filed lawsuits that alleged management has lied and misrepresented various matters.  Plaintiff came up with this theory when the SEC opened an investigation and made allegations that certain of Plaintiff's investors engaged in improprieties, and Plaintiff readily jumped on the bandwagon.  None of Plaintiff's prior, contemporaneous or subsequent law firms, nor its chief financial officer, internal accountants, auditors or in-house counsel, has been willing to give Plaintiff such advice or require any change in the reporting by Plaintiff, and Plaintiff has singled out only Kesner and his Firm with its convoluted theories, alleging numerous salacious facts that have no bearing on the allegations in the Complaint or advice given by the Firm.

Plaintiff alleges that Kesner and the Firm, in loosely-described ways, had incentive to and favored the third-party when performing services for Plaintiff. Plaintiff omits completely from its analysis that the Delaware Court of Chancery has confirmed all aspects of preferred stock conversions and voting. No SEC charges have been brought against Plaintiff or its officers or directors.  The third-party and various others are the _only_ parties that have been named in any SEC case and that case involves unproven allegations unrelated to Plaintiff's reporting, alleging improper trading occurred in three companies and the inaccurate filing of certain investor reports – reports that are _only_ required to be filed by investors and _not_ by Plaintiff.  The SEC case does not even reference Plaintiff. The case cites three unnamed companies only - Company A, B and C.  The SEC case is expansive and involves allegations about 20 defendants and actions spanning 5 years.

Plaintiff's damages, if any, are the result, directly or indirectly, of decisions and actions management voluntarily took in order to preserve their positions with Plaintiff, and to deflect to others the responsibilities for their own mismanagement, self-dealing, and fraud. Plaintiff failed to follow legal advice and took actions that caused Plaintiff harm when it disavowed, on its own, years of prior financial

Gordon Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA  92101

statements and reports with theories that have been fully debunked by Delaware court decisions. All of Plaintiff's claimed damages are the result of Plaintiff's management's voluntary actions or inactions, and reacting to a routine SEC subpoena for information and testimony from management.

Kesner and the Firm at all times acted appropriately with full disclosure, knowledge and consent of Plaintiff through repeated disclosures and clear, complete and explicit written conflict waivers. Prior to, and following. the Firm's resignation, and at all times during its representation, Plaintiff utilized counsel Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. ("Mintz Levin"). Mintz Levin signed off on all SEC registrations and its board actions and repeatedly served as "conflicts" counsel to Plaintiff in investor negotiations. If injury to Plaintiff ensued, the responsibility therefore lies with Mintz Levin attorneys, Plaintiff's in-house counsel, Plaintiff's board of directors, chief executive officer, chief financial officer, the inside and outside financial management team solely responsible for mathematical calculations and who confirm the accuracy of beneficial ownership calculations, as well as the independent auditors who audit the financial statements and financial calculations in SEC filings. Each of these persons was involved long before Kesner and the Firm became involved, and thereafter, preparing the SEC filings and reports that report beneficial ownership and shareholdings of "groups". The prior and subsequent filings report Plaintiff's investor beneficial ownership and "groups" precisely as prepared and reported during the period in which Kesner and the Firm were engaged.

Plaintiff thereafter engaged the law firm Baker Botts, LLP ("Baker Botts") as counsel who scripted a "game plan" in which Plaintiff accused Kesner and the Firm (but not Mintz Levin or the multitude of other lawyers, executives, board members, accountants or auditors) of wrongdoing, while improperly revealing internal privileged and confidential information gleaned from the Firm's SEC subpoena responses. After presenting themselves to Kesner on behalf of a

"special committee" for investigation, Baker Botts attorneys not only forced out or oversaw the resignation of the entirety of the special committee independent members of the board of directors, they switched allegiances to defend management. Baker Botts failed completely to independently investigate claims by the SEC that management failed to disclose in SEC filings they had allowed themselves to become improperly influenced and controlled by one or more investors in violation of securities laws. In only a few short months, Baker Botts billings exceeded $1 million causing Plaintiff to file for chapter 11 bankruptcy protection. As one of if not the largest creditor of the estate Baker Botts itself became one of Plaintiff's controlling stakeholders through its creditor claims, with an interest in the outcome of this and other lawsuits, to the detriment of independent creditors and investors. Unsatisfied with its control over the internal affairs of Plaintiff and approval of any bankruptcy outcome in which it would get paid, Baker Botts then became engaged by the bankruptcy debtor to sue the very investors that provided $30 million of the funding to Plaintiff, virtually all the funds it ever raised. Unwaivable and uncounted conflicts of interest leave Baker Botts facing responsibility for the events leading to and causing Plaintiff's bankruptcy filing, malpractice, and its own control of Plaintiff, and should bar it from any representation of Plaintiff or the estate in any manner, prevent it from collecting any fees owed, and subject it to direct claims for having taken the actions resulting in the tailspin that started when Plaintiff (incorrectly) disavowed all its prior SEC filings and reports, leading to voluntarily delisting from NASDAQ, loss of investor confidence and interest in continuing to finance Plaintiff, a precipitous stock drop, and ultimately, filing for Chapter 11 bankruptcy.

In September 2018, the Delaware Chancery Court entered an order validating corporate acts Plaintiff complains of in this lawsuit. In September 2018, the SEC filed an action in New York against certain of Plaintiff's investors, *but did not name Plaintiff or its officers, directors or employees*. Plaintiff's Complaint is a

Gordon Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA  92101

thinly-veiled attempt by Plaintiff's management to deflect responsibility for their own actions and avoid their own SEC prosecutions for allowing third-party investors to improperly assert undisclosed control over Plaintiff, facts unbeknownst to Kesner or the Firm who could have had no knowledge of the level of direct dealings between the investors and Plaintiff.

Accordingly, Kesner responds to Plaintiff's specific allegations as follows:

1.     Kesner admits Plaintiff was a biotechnology company developing treatments for certain cancers and that Plaintiff became a public company in 2014 through a reverse merger with a public company Telik, Inc. Kesner admits that Plaintiff's stock traded on the Nasdaq stock market until July 2018. Kesner is without knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 1 of the Complaint and, therefore, denies them.

2.     Kesner admits Plaintiff successfully raised money through debt and equity financing. Kesner is without knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 2 of the Complaint and, therefore, denies them.

3.     Kesner admits Plaintiff engaged the Firm as counsel for federal securities law reporting matters along with its long-time counsel Mintz Levin and that it utilized other experts including in-house counsel and financial experts (internal and external) to perform mathematical calculations. Kesner admits Plaintiff repeatedly executed written engagement letters containing written conflict of interest notices and waivers, and that Plaintiff throughout the Firm's engagement relied upon and engaged conflicts counsel Mintz Levin. Kesner admits Plaintiff received a subpoena from the SEC and on May 20, 2018, Plaintiff filed a Form 8-K disclosing it determined voluntarily it could not file its Form 10-Q report for quarter ending March 2018, and that its financial statements made on Form 10-Ks and Form 10-Qs from 2014 to 2017 should not be relied upon. Kesner is

without knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 3 of the Complaint and, therefore, denies them.

4.     Kesner denies that at any time he or the Firm was called upon to advise or speculate on whether federal regulators would consider whether any person or persons were acting in a manner such that regulators would consider the investors to be a so-called "13D Group", nor that any such advice was given.  As disclaimed in the Introductory Statement, Kesner denies the allegations contained in Paragraph 4 of the Complaint.

5.     Kesner asserts the case *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 286 F.3d 613 (2d Cir. 2002) speaks for itself. As disclaimed in the Introductory Statement, Kesner denies the remaining allegations contained in Paragraph 5 of the Complaint.

6.     Kesner denies the allegations contained in Paragraph 6 of the Complaint.

7.     Kesner asserts the referenced emails speak for themselves. Kesner asserts the investors learned that Plaintiff considered Southern Biotech's transfer to have "inadvertently terminated" a critical consent right came not from Kesner or the Firm but from direct communications between the investors and David Hansen, Plaintiff's CEO, and is referenced in numerous email communications. Kesner asserts that communications with investors were authorized by Gregory Hanson, CFO, both telephonically and by email, and/or by David Hansen.  Kesner asserts he requested Plaintiff and Mintz Levin repeatedly by email and telephonically to remove Kesner and the Firm from communications concerning investors and Southern Biotech, that neither he nor the Firm had involvement or awareness of negotiations or outcome of negotiations, except after they formulated and executed a new agreement, and then solely for the purposes of preparing summaries for SEC filings.  Kesner asserts that Mintz Levin entered into an engagement agreement and rendered advice to Plaintiff (as conflicts counsel) and directed Plaintiff with

respect to all matters pertaining to Southern Biotech, the so-called "consent right" and the investors. Kesner asserts internal communications that address Southern Biotech support the conclusion that the Firm maintained procedures to avoid conflicts. Kesner asserts the referenced emails and internal dialogue served the purposes of directing staff that other counsel was involved in the matters, and informing the attorneys to refrain from providing advice to Plaintiff that involved Southern Biotech, the consent right, or investors. Kesner asserts the quoted emails support, rather than avoid, Mintz Levin's exclusive province and advice over the matter as conflicts counsel and confirm that Kesner and the Firm's involvement in rendering advice should be avoided, and not for the purposes speculated by Plaintiff. Kesner asserts the direction to "*not discuss*" matters related to Southern Biotech with Plaintiff confirms the Firm's direction to not render advice on a matter in recognition of a potential conflict and that the Firm, as permitted in its engagement letters, had determined to decline to render advice on such matter. Kesner asserts that legal effects of Southern Biotech's transfer would, in any event, arise from the applicability of case law and legal precedent to facts, irrespective of any internal communications or alleged "tips", or internal deliberations on avoiding discussion with the client, possible outcomes or analysis. Kesner asserts the legal effects of the actions, the resolution of any disputes and advice given to management and to the board was, in fact, provided by Mintz Levin and not by the Firm. Kesner asserts that any internal Firm communications, whether or not authorized, do not and could not have any legal effect and the legal effect of such matters is wholly determined by applicable case law and precedent regardless of any musing of attorneys. Kesner denies the remaining allegations contained in Paragraph 7 of the Complaint.

8.     Kesner denies the allegations contained in Paragraph 8 of the Complaint, other than to admit the SEC began an investigation and the Firm produced to Baker Botts, counsel believed to be representing the Special

Gordon Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA  92101

Committee, materials responsive to an SEC subpoena, including privileged and confidential attorney client and work product materials, and internal firm emails and communications, which the Firm directed Baker Botts to review and inspect for privilege in order to withhold responses that could be retained under applicable law prior to responding to a subpoena, a multitude of which communications have been revealed in the Complaint.

9.      Kesner admits the Firm terminated its representation of Plaintiff in May 2018 immediately after Plaintiff voluntarily disclosed that its previously filed financial statements could not be relied upon. Kesner denies the remaining allegations contained in Paragraph 9 of the Complaint.

10.     Kesner admits that it responded to the SEC subpoena delivering unredacted emails and communications to Baker Botts for privilege review which Baker Botts failed to perform.  Kesner admits that investor counsel contacted Kesner to ascertain the identity of successor counsel and was referred to Baker Botts but that no further information was provided.  Kesner denies the allegations contained in Paragraph 10 of the Complaint.

11.     Kesner denies the allegations contained in Paragraph 11 of the Complaint.

12.     Kesner admits Plaintiff sought and obtained an Order from the Delaware Court of Chancery dated September 20, 2018. Kesner denies any remaining allegations contained in Paragraph 12 of the Complaint.

13.     Kesner denies the allegations contained in paragraph 13 of the Complaint.

14.     Kesner denies the allegations contained in paragraph 14 of the Complaint other than he admits the Firm charged and was paid for legal services.

15.     Kesner denies the allegations in paragraph 15 of the Complaint.

**The Parties**

16.     Kesner admits the allegations in paragraph 16 of the Complaint.

Gordon Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA  92101

17.     Kesner admits the allegations in paragraph 16 of the Complaint other than that the Firm's principal place of business is in New York county inasmuch as the Firm's <u>only</u> place of business is in New York county.

18.     Kesner admits he was a partner with the Firm. Kesner denies the alleged September 5, 2018 report was by a "journalist" which matter is the subject of litigation pending in the Southern District of Florida.  Kesner denies he traveled to San Diego "to solicit and perpetuate Sichenzia's engagement" by Plaintiff. Kesner denies any remaining allegations of paragraph 18 of the Complaint.

19.     Kesner admits Gregory Sicheniza is an attorney and partner of the Firm and asserts the website speaks for itself. Kesner is without knowledge sufficient to form a belief as to the truth of the remaining allegations of paragraph 19 and therefore denies them.

20.     Kesner admits Michael Ference is an attorney and partner of the Firm and asserts the website speaks for itself. Kesner is without knowledge sufficient to form a belief as to the truth of the remaining allegations of paragraph 20 and therefore denies them.

21.     Kesner admits Tara Guarneri-Ferrara is an attorney and partner of the Firm.  Kesner is without knowledge sufficient to form a belief as to the truth of the remaining allegations of paragraph 21 and therefore denies them.

22.     Kesner admits Marc Ross is an attorney and partner of the Firm and asserts the website speaks for itself. Kesner is without knowledge sufficient to form a belief as to the truth of the remaining allegations of paragraph 22 and therefore denies them.

23.     Kesner admits Thomas Rose is an attorney and partner of the Firm and asserts the website speaks for itself. Kesner is without knowledge sufficient to form a belief as to the truth of the remaining allegations of paragraph 23 and therefore denies them.

24.     Kesner admits David Manno is an attorney and partner of the Firm and asserts the website speaks for itself. Kesner is without knowledge sufficient to form a belief as to the truth of the remaining allegations of paragraph 24 and therefore denies them.

25.     Kesner admits Richard Babnick, Jr. is an attorney and partner of the Firm and asserts the website speaks for itself. Kesner is without knowledge sufficient to form a belief as to the truth of the remaining allegations of paragraph 25 and therefore denies them.

26.     Kesner admits Avital Even-Shoshan Perlman is an attorney and partner of the Firm and asserts the website speaks for itself. Kesner is without knowledge sufficient to form a belief as to the truth of the remaining allegations of paragraph 26 and therefore denies them.

27.     Kesner is without knowledge sufficient to form a belief as to the truth of the allegations of paragraph 27 and therefore denies them.

28.     Kesner denies he engaged in any wrongful, illegal, tortious, or intentional acts alleged or as agents, conspirators or co-conspirators with respect to Plaintiff. Kesner is without knowledge sufficient to form a belief as to the truth of the remaining allegations of paragraph 28 and therefore denies them.

**Jurisdiction**

29.     Kesner denies the allegations contained in paragraph 29 of the Complaint.

30.     Kesner denies the allegations contained in paragraph 30 of the Complaint other than that Kesner had served as an attorney for the SEC.

31.     Kesner asserts no term sheet was ever negotiated, completed or executed, that any draft unexecuted term sheet was produced by third parties, not Kesner, and speaks for itself other than that a draft unexecuted term sheet explicitly stated that it was to be "non-binding" had it been executed. Upon information and belief, Kesner asserts that prior to engagement of the Firm and

Gordon Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA  92101

during the Firm's engagement, Plaintiff's investors required Plaintiff to hire counsel (other than the Firm). Kesner asserts that its board of directors on behalf of one or more important investors, required, instructed and compelled Plaintiff to hire Mintz Levin and to continue to retain and utilize Mintz Levin during the entire period which Kesner and the Firm served as co-counsel, through the present date. Kesner asserts that Mintz Levin continued its representation from the time that Plaintiff was known as Telik, and that Mintz Levin was paid over $1.2 million prior to the Kesner and the Firm's engagement for a period of less than one year which, upon knowledge and belief, was the sole reason for including in a draft, unexecuted, and non-binding term sheet, an aspiration that Plaintiff consider engaging alternate counsel who would be equally skilled but less costly. Kesner asserts that it is unknown how many millions Mintz has been paid but, as stated in Plaintiff's SEC filings and reports, Mintz had been paid at least $1.2 million for a few short months of service, less than the one-year period in which the potential investor had sought to obtain an agreement from Kesner that the Firm would be willing to perform similar SEC reporting services for $120,000 as a fixed fee, paid in advance. In any event, Kesner asserts that his and the Firm's engagement was not the result of the potential investors negotiations, that the investor who prepared the unexecuted and non-binding draft term sheet never invested in the financing round that coincided with the Firm's engagement and that the investment documents on which the investment was made include no obligation and make no mention whatsoever of any requirement or obligation to engage Kesner or the Firm, any payment arrangements, or similar matter. Kesner asserts the Firm's engagement was the voluntary act of David Hansen and Gregory Hanson, the senior officers of Plaintiff, was fully authorized by the independent approval of the board of directors of Plaintiff with the knowledge of and approval of Mintz Levin, and followed full and candid written and oral descriptions and written waiver of any and all conflicts of interest as a result of the Firm's prior representation of the

Gordon Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

investment bank that the Firm represented prior to the engagement, which secured funding for Plaintiff, which investment included several investors (but not the potential investor who had prepared the draft, unexecuted non-binding term sheet) and several third-parties that had prior relationships with Kesner and the Firm. Kesner assets that at any time the Firm's engagement could have been and was subject to voluntary termination by Plaintiff or the Firm.  Kesner asserts an original term sheet draft first provided to Plaintiff was produced by Palladium Capital, an investment banker, and was not for purposes of any potential investor with whom Kesner or the Firm had any pre-existing relationship as counsel and was provided to Kesner as a potential investor only, since Kesner had prior successful investments with such banker.  Kesner is without knowledge sufficient to form a belief as to the truth of the remaining allegations of paragraph 31 and therefore denies them.

32.    Kesner admits Plaintiff executed an engagement letter on or around April 2, 2015. Kesner asserts that the engagement letter speaks for itself. Kesner denies the remaining allegations of paragraph 32 of the Complaint.

33.    Kesner admits Plaintiff executed additional engagement letters with the Firm.  Kesner asserts these additional engagement letters speak for themselves. Kesner denies the remaining allegations of paragraph 33 of the Complaint.

34.    Kesner asserts Plaintiff executed multiple engagement letters with the Firm. Kesner asserts these engagement letters speak for themselves.  Kesner asserts he sought, and obtained, written and oral approval from David Hansen and Gregory Hanson, who thanked him personally by return email and telephonically for his investments when made, with each and every investment made personally or by an entity (such as a self-directed retirement IRA or limited liability company in which Kesner served as manager), and Kesner personally signed all such documents as "manager" under his own name, undisguised in any manner, completed subscription agreements for, and transmitted to Plaintiff under his own

email and signature that were well known to Plaintiff. Kesner asserts Plaintiff routinely corresponded with Kesner concerning these investments, asking for signatures on waivers and other documents, or additional information and Plaintiff was well aware nothing about these investments was opaque, hidden or disguised. Kesner asserts he was required, as were other investors, to agree to terms that were applicable to each of Plaintiff's other investors, negotiated by David Hansen and/or Gregory Hanson, Kesner asserts that when they struck terms with investors Plaintiff sent emails and letters to Kesner in the name of the limited liability companies and retirement entities in which Kesner's investments were held. Kesner is without knowledge sufficient to form a belief as to the truth of the remaining allegations of paragraph 34 of the Complaint and therefore denies them.

35.    Kesner asserts all matters in the prior paragraph were honestly disclosed, that Plaintiff was well aware that Kesner maintained other relationships with other companies in which its investors were involved, for example, certain of Plaintiff's directors (Varvaro) also served as officers and/or directors (or appointed for investors) in other companies in which investors in Plaintiff were also investors and Kesner and the Firm also served as counsel. Kesner asserts that despite similarities involving overlapping investors, director relationships, Kesner and the Firm's engagement as counsel and receipt of stock for fees or investment, none of these other companies disavowed years of historical financial statements alleging that a "group" consisting of its investors (and Kesner or the Firm) existed making its reporting unreliable or incorrect. Kesner asserts that Plaintiff cannot disavow knowledge of its directors as not constituting knowledge of any fact or circumstances because counsel to Plaintiff (or any officer of Plaintiff) does not maintain or disclaims such knowledge. Kesner is without knowledge sufficient to form a belief as to the truth of the remaining allegations of paragraph 35 of the Complaint and therefore denies them.

36.    Kesner denies the allegations of paragraph 36 of the Complaint.

37.     Kesner admits the Firm withdrew from representing Plaintiff in May 2018 immediately after Plaintiff filed its Form 8-K stating that its financial statements could not be relied upon. Kesner denies the remaining allegations of paragraph 37 of the Complaint.

38.     Kesner denies the allegations of paragraph 38 of the Complaint other than to admit that he is introduced to potential clients through social and professional contacts that include persons who are investors in Plaintiff, bankers associated with Plaintiff and its investors, other lawyers associated with Plaintiff and its investors, directors and others, and that he becomes involved generally in approximately five new engagements per year.

39.     Kesner admits that Plaintiff has cited two publicly available cases, the pleadings and holdings in those cases speak for themselves but were in no event concealed as they are a matter of public record available at all times to Plaintiff. Kesner denies the remaining allegations of paragraph 39 of the Complaint.

40.     Kesner admits he is an investor and the manager of any named entity which provided subscription agreements to Plaintiff, signed by Kesner in which he is identified to Plaintiff as manager. Kesner denies the remaining allegations of paragraph 40 of the Complaint.

41.     Kesner denies the allegations of paragraph 41 of the Complaint, other than admits that Plaintiff required Kesner (entities) to invest additional capital from time to time under threat of dilution or loss of rights, which terms were negotiated directly with investors by Plaintiff with the assistance of Mintz Levin, and which terms were offered to all investors similarly situated under threat of dilution of loss of rights. Kesner admits that prior to the Firm's engagement, an existing investor agreed to sell certain shares held by such investor to Kesner in a private transaction at or near such investor's own purchase price.

42.     Kesner denies the allegations of paragraph 42 of the Complaint.

43.     The allegations of paragraph 43 are legal conclusions and therefore no response is required.

44.     Kesner denies the allegations of paragraph 44 of the Complaint and cites Plaintiff's own current and prior SEC filings and reports for the proposition that Mintz Levin and Baker Botts agree with the filings and reports, the correctness of which has been confirmed by the Delaware Chancery Court.

45.     Kesner admits he has practiced securities law for over thirty years. Kesner denies the remaining allegations of paragraph 45 of the Complaint.

46.     Kesner denies he or the Firm performed mathematical calculations of holdings of investors or the manner in which Plaintiff and its other professionals prepared for SEC filings, other than frequently reminding Gregory Hanson to obtain responses to questionnaires he was advised to obtain directly from investors on which he and his staff calculated beneficial ownership and determined "group" relationships, prepared tables and wrote other disclosures for inclusion in Plaintiffs' SEC reports, and that the Firm merely reviewed for internal consistency the facial accuracy of such information against prior reports and publicly available information. Kesner denies any remaining allegations of paragraph 46 of the Complaint.

47.     Kesner denies the allegations contained in paragraph 47 of the Complaint other than to assert that investment contracts prepared for Plaintiff by Mintz Levin prior to engaging Kesner and the Firm contain various contractual provisions that define the individual investment status of investors and generally disclaim a claim of "group" ownership by Plaintiff, as do terms of the later investment contracts utilized by Plaintiff.

48.     Kesner denies the allegations of paragraph 48 of the Complaint.

49.     Kesner admits Plaintiff is a clinical-stage biotechnology company. Kesner denies the remaining allegations of paragraph 49 of the Complaint.

Gordon Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

50.     Kesner denies the allegations of paragraph 50 of the Complaint other than admits it participated in preparing summaries of the consent right and various transactions for reporting public filings.

51.     Kesner is without knowledge sufficient to form a belief as to the truth of any remaining allegations of paragraph 51 of the Complaint and therefore denies them.

52.     Kesner is without knowledge sufficient to form a belief as to the truth of the allegations of paragraph 52 of the Complaint and therefor denies them.

53.     Kesner is without knowledge sufficient to form a belief as to the truth of the allegations of paragraph 53 of the Complaint and therefore denies them.

54.     Kesner asserts Plaintiff's alleged email speaks for itself. Kesner is without knowledge sufficient to form a belief as to the truth of the allegations of paragraph 54 of the Complaint and therefore denies them and denies any consent was sent to investors, and asserts that Mintz Levin was engaged on matters pertinent to the legal effect of termination of any consent right with Southern Biotech and in any event had the right been inadvertently terminated neither any internal discussion or alert would have had any legal effect.

55.     Kesner asserts the referenced emails speak for themselves. Kesner is without knowledge sufficient to form a belief as to the truth of the allegations of paragraph 55 of the Complaint and therefore denies them and asserts Plaintiff did authorize Kesner to gather information on the status of Southern Biotech holdings, and denies that any information gathering would have any legal effect in any event. Kesner asserts that Mintz Levin was engaged on matters pertinent to the termination of the consent right and Southern Biotech and any failure to respond is consistent with Kesner and the Firm's determination to refrain from providing advice on such matters being handled by Mintz Levin.

56.     Kesner is without knowledge sufficient to form a belief as to the truth of the allegations of paragraph 56 of the Complaint and therefore denies them other

Gordon Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA  92101

than to assert that Mintz Levin was engaged on matters pertinent to the legal effect of termination of any consent right with Southern Biotech and in any event had the right been inadvertently terminated neither any internal discussion or alert would have had any legal effect.

57.   Kesner is without knowledge sufficient to form a belief as to the truth of the allegations of paragraph 57 of the Complaint and therefore denies them other than to asset that Kesner immediately and repeatedly informed Gregory Hanson he and the Firm would not be involved in such matters.

58.   Kesner denies the allegations in paragraph 58 of the Complaint and asserts that Mintz Levin was engaged to determine the legal effect, if any, of the matters described, and would have had to assess how a consent right could be "restored" if terminated, if it transferred with the share transfer and related matters, such information, conclusions or advice provided by Mintz Levin.

59.   Kesner is without knowledge sufficient to form a belief as to the truth of the allegations of paragraph 59 of the Complaint and therefore denies them.

60.    Kesner is without knowledge sufficient to form a belief as to the truth of the allegations of paragraph 60 of the Complaint and therefore denies them.

61.   Kesner is without knowledge sufficient to form a belief as to the truth of the allegations of paragraph 61 of the Complaint and therefore denies them, other than to admit Plaintiff, relying upon the advice of Mintz Levin, agreed to provide a consent right.

62.   Kesner admits that around December, 2016 Plaintiff received a request for information from a regulator, that Mintz Levin was counsel handling the regulator's request on Plaintiff's behalf, and that Plaintiff sent the regulator's letter and a draft response from Mintz Levin for Kesner to review. Kesner denies all remaining allegations of paragraph 62.

63.   Kesner admits he made suggestions to the draft response letter prepared by Mintz Levin which was prepared for submission on Mintz Levin

letterhead, and suggested revisions to correct material inaccuracies, misrepresentations, half-truths and omissions he believed to be present, as well as suggesting that information not requested could be excluded. Kesner asserts the inaccuracies to have been provided by or under supervision of Gregory Hanson at Plaintiff's behest, and asserts further that Kesner informed Mintz Levin and Gregory Hanson that correction was needed and all dealings with regulatory bodies be truthful, accurate and forthright. Kesner asserts that he and the Firm are without information or belief of whether, Plaintiff was speaking with investors with any frequency or illegally providing investors with non-public information or updates that would constitute illegal material non-public information, actions they are specifically prohibited from doing under applicable law and the contractual investment agreements. Kesner asserts he is entitled to rely upon Plaintiff's lawful behavior to not communicate non-public information to investors or provide selective non-public business updates to investors in performing his services. Kesner admits that regulators routinely request additional information in an informal letter directed to issuers for information gathering, and has reviewed dozens of such letters but denies he engaged in any wrongful conduct with respect to the draft Mintz Levin letter and Plaintiff. Kesner is without knowledge sufficient to form a belief as to the truth of the remaining allegations of paragraph 63 of the Complaint and therefore denies them.

64.     Kesner denies the allegations contained in paragraph 64 of the Complaint.

65.     Kesner admits the allegations of paragraph 65 in that Plaintiff sold preferred stock pursuant to contracts, and asserts that the term Investors as defined in paragraph 4 of the Complaint is unclear. Kesner is without knowledge sufficient to form a belief as to the truth of the allegations of paragraph 65 as they relate to "Investors" as defined in paragraph 4 of the Complaint and therefore denies them. Kesner denies preferred stock could be converted into shares of common stock that

could be immediately sold on the open market in all instances and admits that convertible preferred stock issued to investors under agreements from the Telik transactions and thereafter contain provisions known as beneficial ownership blockers as required by investors and their counsel, and approved by Mintz Levin and the Firm for preferred stock.

66.     Kesner denies the allegations contained in paragraph 66 of the Complaint.

67.     Kesner is without knowledge sufficient to form a belief as to the truth of the allegations of paragraph 67 of the Complaint and therefore denies them.

68.     Kesner is without knowledge sufficient to form a belief as to the truth of the allegations of paragraph 68 of the Complaint and therefor denies them.

69.     Kesner admits Plaintiff sought and obtained validation of the number of shares of common stock issued and certain corporate acts pursuant to an Order from the Delaware Court of Chancery dated September 20, 2018. Kesner denies any remaining allegations contained in Paragraph 69 of the Complaint.

70.     Kesner admits Plaintiff received notice the SEC was conducting an investigation into Plaintiff's registration statements (and amendments thereto). Kesner is without knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 70 of the Complaint and, therefore, denies them.

71.     Kesner asserts the referenced CNBC article speaks for itself but denies that CNBC ever reached Kesner by phone. Kesner denies the remaining allegations of paragraph 71 of the Complaint.

72.     Kesner is without knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 72 of the Complaint and, therefore, denies them.

Gordon Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

73.     Kesner is without knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 73 of the Complaint and, therefore, denies them.

74.     Kesner is without knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 74 of the Complaint and, therefore, denies them.

75.     Kesner is without knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 75 of the Complaint and, therefore, denies them.

76.     Kesner is without knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 76 of the Complaint and, therefore, denies them.

77.     Kesner is without knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 77 of the Complaint and, therefore, denies them.

78.     Kesner admits the Firm represented Plaintiff until approximately May 20, 2018. Kesner denies any remaining allegations of paragraph 78 of the Complaint.

79.     Kesner asserts the referenced email speaks for itself. Kesner asserts that the additional project stems from failure of Plaintiff to comply with its obligations to make certain filings with the SEC.  Kesner asserts initiation of SEC investigation and interest in Plaintiff resulted from letters and communications sent by Gregory Hanson to the Office of the Chief Counsel voluntarily seeking administrative relief from a "mistake" knowingly and intentionally made by Plaintiff in its SEC filings.  Kesner asserts that against the advice of Kesner, Plaintiff refused to file certain SEC reports, known as 8-K reports, knowing those reports were required when certain events occurred. Plaintiff knowingly and intentionally failed to publicly announce (as required by NASDAQ) or disclose in

required 8-K filings with the SEC that two of its "key" executives had terminated their employment contracts with Plaintiff "for good reason" and that Plaintiff received threatening demand letters from counsel to those executives demanding hundreds of thousands of dollars for breach by Plaintiff in immediate payment. Plaintiff failed to even notify Kesner or the Firm of such events until well past the due date for filing (four business days) for 8-K reports from the date of the event. As a direct result, in accordance with SEC rules, Plaintiff became subject to denial for a minimum one year period of the right to rely on and utilize a highly beneficial means to register its securities for sale to investors under registration procedures (known as Form S-3), blocking it from raising capital efficiently in the public markets, obtaining offers of financing from investment banks and institutions, and taking advantage of beneficial procedures that minimize dilution from new investors when companies are traded on NASDAQ. Kesner asserts that Plaintiff's failure to file required reports is a violation of NASDAQ listing rules and a breach of numerous contracts to which Plaintiff is bound. Kesner asserts that violations are seldom, if ever "forgiven" by the SEC but in rare circumstances (such as a printer error or blackout of the SEC's filing service") companies have been known to gain relief from the bar. Kesner asserts Plaintiff's "administrative challenge" involved letters proposed to be written to the SEC by Gregory Hanson seeking relief from the bar. Kesner asserts that after a series of letters were sent by Hanson, some of which contained fanciful arguments and partial truths, the SEC issued an order under Section 8(e) that refused to allow any existing and pending registration statements of Plaintiff to proceed, and denies the project described was designed for issuance of more shares, but admits that it triggered the SEC subpoena issued and commenced the investigation of Plaintiff and that the commencement of the investigation and issuance of the subpoenas stemmed from these voluntary and ill-conceived actions, were against the advice of counsel. The subsequent SEC action against the investors naming Company A, B and C, while related, is asserted to

Gordon Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

have been the result of a year-long multi-party, multi-issuer investigation by the SEC and not the result of the missed 8-K filings. Kesner is without knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 79 of the Complaint and, therefore, denies them.

80.   Kesner is without knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 80 of the Complaint and, therefore, denies them.

81.   Kesner admits Plaintiff agreed to allow the Firm to assist in document production required of the Firm (as an agent of Plaintiff) and to assist in document collection for Plaintiff itself, responsive to the SEC subpoena stemming from the Section 8(e) bar, and that its activities in this regard were directed to the "special committee" of the independent directors of the board of directors of Plaintiff. Kesner is without knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 81 of the Complaint and, therefore, denies them.

82.   Kesner denies the allegations contained in paragraph 82 of the Complaint.  Kesner asserts that services performed responding to the subpoena were limited to gathering emails and documents at the firm (as agent of Plaintiff as required by the subpoena) and assisting Plaintiff in organizing emails and documents it was required to produce to the SEC from records maintained by Plaintiff.  Kesner denies that it represented any of Plaintiff's officers or directors or Plaintiff itself, in the SEC investigation, in any deposition or discovery, did not perform services in connection with any interview or OTR (on the record) meeting with the staff of the SEC and did not negotiate with the SEC.  Kesner asserts that the Firm resignation resulted from and immediately followed learning Plaintiff without consultation of the Firm had filed what Kesner asserts to be a false Form 8-K disavowing reliance on prior financial statements and reports for a multi-year period by Plaintiff. Kesner asserts that he informed the board of directors and

Gordon Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA  92101

recommended Plaintiff hire new counsel to proceed after the document production phase was completed. Kesner asserts Baker Botts was engaged and should have reviewed the Firms documents to preserve and protect attorney client and confidential privileged communications prior to submission to the SEC, to assist with depositions and discovery and to negotiate with the SEC. Kesner was informed Baker Botts would perform those functions after David Hansen sought successor counsel, requesting Kesner review the Plaintiff insurance policies and counsel lists. Kesner asserts that there are and there have not been commenced any SEC or other proceedings (other than the subpoena) against Plaintiff, its officers or directors. Kesner is without knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 82 of the Complaint and, therefore, denies them.

83. Kesner denies the allegations contained in paragraph 83 of the Complaint.

84. Kesner asserts the referenced text messages speak for themselves. Kesner is without knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 84 of the Complaint and, therefore, denies them.

85. Kesner admits that when he received a telephonic inquiry from an investor's counsel he provided contact information for Baker Botts. Kesner denies he engaged in any wrongful conduct with respect to Plaintiff and further denies the allegations of paragraph 85 of the Complaint.

86. Kesner denies the allegations of paragraph 86 of the Complaint other than to assert that Plaintiff owed unpaid legal fees to the Firm.

87. Kesner denies the allegations paragraph 87 of the Complaint.

88. Kesner admits that he is manager of Paradox and Darwin Retirement, Kesner denies the remaining allegations of paragraph 88 of the Complaint.

89.     Kesner asserts paragraph 89 seeks a legal conclusion as to which no response is required.

90.     Kesner admits on September 7, 2018, the SEC filed an action in New York against certain of Plaintiff's investors, and that the SEC did ***not*** name Plaintiff or its officers, directors or employees, or the Firm or Kesner. With respect to the remaining allegations of paragraph 90, Kesner asserts the SEC's complaint speaks for itself.

## FIRST CAUSE OF ACTION

### (Negligent Professional Practice against all Defendants)

91.     Kesner incorporates by reference the foregoing responses.

92.     Kesner admits between April 2, 2015 and approximately May 23, 2018, the Firm performed legal services for Plaintiff. Kesner is without knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 92 of the Complaint and, therefore, denies them.

93.     Kesner denies the allegations of paragraph 93.

94.     Kesner denies the allegations of paragraph 94.

95.     Kesner denies the allegations of paragraph 95.

96.     Kesner denies the allegations of paragraph 96.

97.     Kesner denies the allegations of paragraph 97.

98.     Kesner denies the allegations of paragraph 98.

## SECOND CAUSE OF ACTION

### (Breach of Fiduciary Duty against all Defendants)

99.     Kesner incorporates by reference the foregoing responses.

100.    Kesner admits between April 2, 2015 and approximately May 23, 2018, the Firm performed legal services for Plaintiff. The allegations pertaining to the duties owed by Defendants seeks a legal conclusion to which no response is required.

101.    Kesner denies the allegations of paragraph 101.

Gordon Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

102.    Kesner denies the allegations of paragraph 102.

103.    Kesner denies the allegations of paragraph 103.

## THIRD CAUSE OF ACTION

### (Breach of Contract against all Defendants)

104.    Kesner incorporates by reference the foregoing responses.

105.    Kesner admits Plaintiff executed engagement letters and received payment in cash and stock.  Kesner denies the remaining allegations of paragraph 105.

106.    Kesner denies the allegations of paragraph 106.

107.    Kesner denies the allegations of paragraph 107.

108.    Kesner denies the allegations of paragraph 108.

## FOURTH CAUSE OF ACTION

### (Restitution for Unjust Enrichment against all Defendants)

109.    Kesner incorporates by reference the foregoing responses.

110.    Kesner is without knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 110 of the Complaint and, therefore, denies them.

111.    Kesner asserts paragraph 111 seeks a legal conclusion as to which no response is required.

112.    Kesner denies the allegations of paragraph 112.

113.    Kesner is without knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 113 of the Complaint and, therefore, denies them.

114.    Kesner asserts paragraph 114 seeks a legal conclusion as to which no response is required.

## FIFTH CAUSE OF ACTION

### (Deceit against all Defendants)

115.    Kesner incorporates by reference the foregoing responses.

116.   Kesner denies the allegations of paragraph 116.

117.   Kesner denies the allegations of paragraph 117.

118.   Kesner denies the allegations of paragraph 118.

119.   Kesner denies the allegations of paragraph 119.

120.   Kesner denies the allegations of paragraph 120.

121.   Kesner denies the allegations of paragraph 121.

## SIXTH CAUSE OF ACTION

### (Fraud against Sichenzia and Kesner)

122.   Kesner incorporates by reference the foregoing responses.

123.   Kesner denies the allegations of paragraph 123.

124.   Kesner denies the allegations of paragraph 124.

125.   Kesner denies the allegations of paragraph 125.

126.   Kesner denies the allegations of paragraph 126.

127.   Kesner denies the allegations of paragraph 127.

128.   Kesner denies the allegations of paragraph 128.

129.   Kesner denies the allegations of paragraph 129.

## GENERAL DENIAL

130.   Kesner denies he engaged in any wrongful conduct with respect to Plaintiff and denies any allegation in the Complaint not expressly admitted in this Answer.

## PRAYER FOR RELIEF

Kesner denies Plaintiff is entitled to judgment and the relief it requests in its Prayer For Relief.

## DEFENSES

Kesner asserts the following affirmative defenses:

## FIRST DEFENSE

1.   Plaintiff's Complaint may be barred because this Court lacks personal jurisdiction over Kesner.

Gordon Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA  92101

**SECOND DEFENSE**

2.     Plaintiff's Complaint may be barred or limited because Plaintiff has failed to state a claim for relief.

**THIRD DEFENSE**

3.     Plaintiff's Complaint may be barred or limited because Kesner has violated no legal duty owing by him to Plaintiff.

**FOURTH DEFENSE**

4.     Plaintiff's Complaint may be barred or limited because Plaintiff has failed to take steps necessary to preserve any rights it may have had to any relief under this Complaint.

**FIFTH DEFENSE**

5.     Plaintiff's Complaint may be barred or limited because and acts and any damages sustained by the Plaintiff was the result of its Plaintiff's own actions and may be barred or limited because of such acts.

**SIXTH DEFENSE**

6.     Plaintiff's Complaint may be barred or limited because Plaintiff did not authorize the commencement of this action; it is brought without authority of the Plaintiff debtor-in-possession in bankruptcy, and therefore, not by the real party in interest.

**SEVENTH DEFENSE**

7.     Plaintiff's Complaint may be barred or limited because Plaintiff failed to mitigate its damages, if any.

**EIGHTH DEFENSE**

8.     Plaintiff's Complaint may be barred or limited because Plaintiff has not been harmed because it retains the full protection of state and federal law against the officers and directors of Plaintiff who authorized and caused the injuries alleged, regardless of the language in the engagement agreements or any services rendered.

Gordon Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

### NINTH DEFENSE

9.      Plaintiff's Complaint may be barred or limited because Kesner at all times relied upon the truthfulness, accuracy, completeness and correctness of the information provided by Plaintiff, including by way of written certifications, representation letters, emails and oral representations upon which defendant relied.

### TENTH DEFENSE

10.     Plaintiff's Complaint may be barred or limited because Plaintiff was at all times represented by in-house counsel Warner Broaddus, Esq., and the law firm, Mintz Levin Cohn, Ferris, Glovsky & Popeo, who advised Plaintiff on matters complained of in the Complaint, who provided information to defendant upon which defendant relied and which was required to be truthful, accurate, complete and correct.

### ELEVENTH DEFENSE

11.     Plaintiff's Complaint may be barred or limited because Plaintiff, through its officers and directors, misled Kesner and engaged in securities and common law fraud, self-dealing, breaches of fiduciary duty and conspiracy, in order to secure financing for Plaintiff on the basis of false and misleading offering circulars, statements, representations, filings and reports made with the SEC, paid themselves from the proceeds thereof, issued dilutive shares to themselves, entered into undisclosed agreements and understandings in which third parties did in fact or are alleged to have obtained control over Plaintiff that was not disclosed to Kesner, which Plaintiff is responsible for and which caused the injuries to Plaintiff complained of.

### TWELFTH DEFENSE

12.     Plaintiff's Complaint may be barred or limited because Plaintiff has suffered no damages caused by Kesner.

29

**Gordon Rees Scully Mansukhani LLP**
101 W. Broadway, Suite 2000
San Diego, CA 92101

### THIRTEENTH DEFENSE

13.     Plaintiff's Complaint may be barred or limited because Kesner has performed all of his statutory, contractual, legal and ethical duties, if any, to the Plaintiff.

### FOURTEENTH DEFENSE

14.     Plaintiff's Complaint may be barred or limited by Plaintiff's own conduct, or the conduct of Plaintiff's agents including Plaintiff's attorneys Warner Broaddus, Esq., the law firm, Mintz Levin Cohn, Ferris, Glovsky & Popeo, and the law firm of Baker Botts, LLP in accordance with the doctrine of comparative or contributory negligence, and by Plaintiffs accountants, auditors and employees who contributed to the conduct or matters underlying the Complaint.

### FIFHTEENTH DEFENSE

15.     Plaintiff's damages, if any, were the result of actions by one or more third parties over whom Kesner had no agency or control and for whose actions Kesner is not be liable or are the result of actions by one or more third parties whose actions are imputed to Plaintiff.

### SIXTEENTH DEFENSE

16.     Plaintiff's Complaint may be barred or limited by Plaintiff's own conduct, or the conduct of Plaintiff's agents, by the doctrines unclean hands, waiver and estoppel.

### SEVENTEENTH DEFENSE

17.     Plaintiff's Complaint may be barred or limited because Plaintiff authorized, consented to, and ratified all conduct performed by Kesner on Plaintiff's behalf.

### EIGHTEENTH DEFENSE

18.     Plaintiff's Complaint may be barred or limited because there is no contract between Plaintiff and Kesner.

### NINETEENTH DEFENSE

19.    Plaintiff's Complaint may be barred or limited because the alleged misrepresentations are nonactionable statements as they were neither false or misleading.

### TWENTIETH DEFENSE

20.    Plaintiff's Complaint may be barred or limited because Defendants lacked the requisite intent as any alleged misrepresentations were based on a good faith belief.

### TWENTY-FIRST DEFENSE

21.    Plaintiff's Complaint may be barred or limited due to lack of detrimental and/or justifiable reliance on any alleged misrepresentations.

### TWENTY-SECOND DEFENSE

22.    Plaintiff's Complaint may be barred or limited by applicable statutes of limitations.

### TWENTY-THIRD DEFENSE

23.    Plaintiff's Complaint may be barred or limited because Plaintiff has failed to perform conditions precedent for recovery.

### TWENTY-FOURTH DEFENSE

24.    Plaintiff's Complaint may be barred or limited because Plaintiff fails to allege facts sufficient to entitle Plaintiff to an award of punitive damages or attorneys' fees.

### TWENTY-FIFTH DEFENSE

25.    Kesner asserts that to the extent he is required to pay damages to Plaintiff, he is entitled to equitable indemnity and contribution, in part or in whole, from any co-defendants or any third party.

### TWENTY-SIXTH DEFENSE

26.    Kesner objects to the reference and use of certain e-mails and information referred to in Plaintiff's Complaint, including internal e-mails

between and among members of the Firm, on the basis that this information is subject to and protected by privilege, including the attorney-client and work product privileges, and were inadvertently produced to Plaintiff's counsel, then improperly produced to Plaintiff's subsequent counsel. Kesner objects to the use of and reference to such documents and information obtained from privileged material by Plaintiff for any purpose in this case.

## ADDITIONAL DEFENSES

27. Kesner reserves the right to assert additional affirmative defenses as supported by the evidence in this case.

**WHEREFORE** Defendant Harvey Kesner requests the Court enter judgment in his favor and against the Plaintiff, for recovery of his attorneys' fees costs and for such further relief as the Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Defendant Harvey Kesner demands a trial by jury as to any claims so triable.

Dated:  June 13, 2019

GORDON REES SCULLY MANSUKHANI, LLP

By: _/s/   John M. Palmeri_
      John M. Palmeri

Attorneys for Defendant
HARVEY KESNER

Gordon Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA  92101

32