Jason M. Leviton (*pro hac vice*)
Joel A. Fleming (CA Bar No. 281264)
Jacob A. Walker (CA Bar No. 271217)
Lauren Godles Milgroom (*pro hac vice*)
Amanda R. Crawford (*pro hac vice*)
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(t) (617) 398-5600
(f) (617) 507-6020
jason@blockesq.com
joel@blockesq.com
jake@blockesq.com
lauren@blockesq.com
amanda@blockesq.com

*Attorneys for Plaintiff MabVax Therapeutics Holdings, Inc.*

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MABVAX THERAPEUTICS HOLDINGS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>SICHENZIA ROSS FERENCE LLP (f/k/a SICHENZIA ROSS FERENCE KESNER LLP; f/k/a SICHENZIA ROSS FRIEDMAN FERENCE LLP), HARVEY KESNER, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 3:18-cv-02494-WQH-MSB<br><br>**JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE**<br><br>**RE: MOTION BY PLAINTIFF TO COMPEL RESPONSES TO INTERROGATORIES REGARDING CONFLICTS**<br><br>Before: Honorable Magistrate Judge Michael S. Berg<br><br>Date:  As determined by the Court.<br>Trial Date:  None Set. |

## I.   PLAINTIFF'S POSITION

At its core, this is a case about lawyers who harmed one client to benefit others. As Judge Hayes ruled on the motion to dismiss, Plaintiff MabVax Therapeutics Holdings, Inc. ("MabVax") has plausibly alleged that Defendants Sichenzia Ross Ference LLP (the "Firm") and Harvey Kesner ("Kesner") (collectively, "Defendants") (i) exploited their positions of trust by advancing the interests of their favored clients, *i.e.*, the Investors, at the expense of MabVax and (ii) defrauded MabVax by failing to disclose the extent of those conflicts.[1] Defendants' refusal to answer simple interrogatories about those conflicts highlights their vulnerability on this issue and exposes Defendants' reckless approach to managing their ethical obligations.

### A.   Facts

As set forth in the accompanying Declaration of Joel Fleming ("Fleming Dec."), MabVax served the Firm and Kesner with separate requests for production of documents on July 31, 2019.[2] Firm Document Request No. 3 and Kesner Document Request No. 3 sought: "Documents sufficient to identify all entities in which (A) any Investor owns or owned a beneficial interest and (B) (i) You own or owned a beneficial interest or (ii) You serve or served as an attorney, officer, director, employee, manager, or agent."[3] On September 17, 2019, both the Firm and Kesner served their responses on MabVax and objected to Document Request No. 3.[4] After a meet-and-confer discussion, MabVax agreed to seek that information through interrogatories,[5] which it served on November 11, 2019.[6]

---

[1] *See* ECF No. 36 at 45.
[2] ECF No. 85-1 at 5 ("Firm Document Requests"); ECF No. 85-1 at 23 ("Kesner Document Requests").
[3] The full text of the requests and responses are included in Appendices A and B.
[4] ECF No. 85-1 at 40 ("Firm Responses"); ECF No. 85-1 at 67 ("Kesner Responses").
[5] *See* Fleming Dec., ¶ 4.
[6] *See* Fleming Dec., Ex. A ("Firm Interrogatories"); Ex. B ("Kesner Interrogatories").

**Firm Interrogatory No. 2** and **Kesner Interrogatory No. 2** seek to have Defendants identify the information requested in Document Request No. 3. Similarly, **Firm Interrogatory No. 1** and **Kesner Interrogatory No. 1** seek the identities of people or entities for whom Defendants served as legal counsel who were beneficial owners of MabVax securities and/or provided professional services to MabVax. On December 13, 2019, Kesner served his responses on MabVax, and on December 16, 2019, the Firm served its responses on MabVax.[7] Defendants objected to Interrogatories Nos. 1 and 2 and refused to provide MabVax with complete responses.

### B. Argument

Through Interrogatories Nos. 1 and 2, MabVax seeks to prove the full web of connections that enabled Defendants' defrauding of MabVax. The information sought is both highly relevant and narrowly tailored.

The requested information goes to the crux of MabVax's case. Defendants' intimate knowledge of the Investors' investment patterns at other companies— gleaned through their representation of those companies and their pattern of investing alongside the Investors—is relevant to MabVax's claim that Defendants knowingly provided false advice about whether the Investors should be treated as a 13D Group.[8] The information is also centrally relevant to MabVax's claim that Defendants failed to disclose all material facts about their conflicts.[9] In denying Defendants' motion to dismiss, Judge Hayes relied on the fact that Defendants had been inserted as counsel in at least 22 other companies in which Honig and Stetson

---

[7] *See* Fleming Dec., Ex. C ("Firm Interrogatory Responses"); Ex. D ("Kesner Interrogatory Responses").

[8] The test for whether a 13D Group exists is a heavily fact-dependent inquiry that asks whether there is "direct or circumstantial evidence" to support "the inference of a formal or informal understanding between [the defendants] for the purpose of acquiring, holding, or disposing of securities." *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 286 F.3d 613, 617 (2d Cir. 2002) (cleaned up). This includes "prior relationships and trading patterns." *Id.* at 618.

[9] Similarly, Defendants' undisclosed representation of entities providing professional services to MabVax furthered Defendants' ability to act with the Investors against MabVax's interests.

invested and had invested alongside Honig and other Investors in at least 16 other companies.[10] Only by uncovering all of Defendants' interlocking relationships with the Investors can MabVax fairly evaluate the scope of Defendants' misconduct.

Defendants object that the Interrogatories are vague and ambiguous because MabVax has not defined the term "beneficial owner" or "beneficial interest."[11] This objection is nonsensical. The term beneficial owner is defined by SEC regulations.[12] Defendants are securities lawyers with decades of experience; they know what "beneficial owner" and "beneficial interest" mean.[13]

Defendants further object that the requested information is not in their possession. This objection is hard to understand, because lawyers are obligated to "clearly identify the client or clients" affected by a potential conflict of interest.[14] Accordingly, Defendants should *already* have a list of responsive entities.[15] MabVax is also aware of at least two entities responsive to Interrogatory No. 1 that Defendants have failed to name in their responses: an investment bank and an investor relations firm that MabVax retained at the insistence of the Investors.[16] Defendants represented both entities but did not disclose the conflict in any engagement letter with MabVax. The Firm later identified both entities as Firm clients in letters to MabVax attempting to clawback MabVax's client file. [17]

---

[10] ECF No. 36 at 5.

[11] The Firm also objects the Interrogatories are vague and ambiguous as to the terms "You" and "Your." MabVax agreed to limit the terms to only "Sichenzia Ross Ference LLP and any predecessor entities" for the purposes of this Interrogatory, but the Firm still refused to answer. *See* Fleming Dec., ¶ 5.

[12] 17 CFR § 240.13d-3.

[13] MabVax also clarified that "owns or owned a beneficial interest" means "is or was a beneficial owner" as defined by those SEC regulations. *See* Fleming Dec. ¶ 6.

[14] Model R. Prof'l Conduct 1.7, cmt. 2 (ABA 2019).

[15] Defendants also knew or should have known that they were obligated to compile such a list based on their partial and incomplete disclosure of conflicts in various engagement letters with MabVax.

[16] Those entities are identified by name in the sealed version of the document filed in redacted form at ECF No. 79-12, Ex. A.

[17] *See* Fleming Dec., ¶ 7; ECF No. 73-12 at 21 (redacted copy of sealed exhibit).

And even if Defendants violated their duty, as lawyers, to conduct a conflict check[18] and disclose "all material information in the attorney or firm's possession," about those conflicts,[19] they have an obligation, as litigants, " to make [] reasonable efforts to locate all responsive documents and information necessary to fully respond to interrogatories."[20] The information MabVax seeks can undoubtedly be obtained through "reasonable efforts"—by, among other things, searching public SEC filings that contain ("Kesner" or "Sichenzia") and ("Honig" or "Stetson.")[21] Any argument that *MabVax*, rather than Defendant, is required to perform such a search, however, would fail. Like any other client, MabVax "does not have access to a law firm's list of other clients, and cannot check for itself whether the firm represents adverse parties."[22] MabVax is also entitled to receive the information in a consolidated format that it can present to a jury.

Finally, Defendants argue that client identities are privileged under New York law and protected by the right to privacy under California law. This is a remarkable position for Defendants who, when it served their interests, recently named dozens of their clients in a failed attempt to claw back MabVax's client file.[23] Even if New York law applied,[24] the only authority that Defendants cite for this proposition is

---

[18] *See* Model R. Prof'l Conduct 1.7, cmt. 3 (ABA 2019) ("To determine whether a conflict of interest exists, a lawyer should adopt reasonable procedures, appropriate for the size and type of firm and practice, to determine in both litigation and non-litigation matters the persons and issues involved.").

[19] *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*, 6 Cal. 5th 59, 86 (2018).

[20] *Fresenius Med. Care Holding, Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 657 (N.D. Cal. 2004); *see* Fed. R. Civ. P. 33(b)(3); *Hawkins v. Kroger Co.*, 2019 WL 4416132, at *8 (S.D. Cal. Sept. 16, 2019).

[21] A brief, non-exhaustive search of publicly filed Form 8-Ks by MabVax yielded dozens of responsive entities, including the following examples: Marathon Patent Group, Inc., Majesco Entertainment Co., Function(x) Inc., DraftDay Fantasy Sports, Inc., Polarityte, Inc., Spiral Energy Tech., Inc., ChromaDex Corp., WPCS International Inc., American Strategic Minerals Corp., and Valor Gold Corp.

[22] *J-M Mfg*, 6 Cal. 5th at 86.

[23] Declaration of Chuck Haughey, ECF No. 73-2 (redacted copy of sealed exhibit).

[24] It does not. ECF No. 36 at 46 n.3.

loose dicta from a 1979 family law matter, *Matter of Jacqueline F*, which ultimately held that an attorney was required to disclose the address of the child whose custody was in dispute.[25] The New York Court of Appeals (the state's highest court) has since squarely held that "[c]ommunications regarding the identity of a client … are not generally protected under the [attorney-client] privilege[.]"[26]

Defendants' privacy arguments fail because, as Defendants are well aware, their privacy concerns are appropriately addressed by the protective order in this case.[27] In its partial response to Interrogatory No. 2, the Firm disclosed the names of two responsive entities "[s]ubject to Confidentiality pursuant to the Protective Order in this action . . . . " Kesner also disclosed two responsive entities. As discussed above, Defendants also disclosed the names of dozens of clients to MabVax in connection with the clawback motion.

Defendants' logic here rests on the same unethical premise they have relied on throughout the case: that the interests of some clients are more important than those of others. That is not the law.

Dated: January 13, 2020            BLOCK & LEVITON LLP

                    By:    */s/ Joel A. Fleming*
                           Jason M. Leviton (*pro hac vice*)
                           Joel A. Fleming (CA Bar No. 281264)

---

[25] *Matter of Jacqueline F.*, 391 N.E. 2d 967, 970, 972 (1979). The *Jacqueline* court also noted that an attorney must disclose her client's identity, even if the client is not a party to the case, where, as here, "an 'attorney's assertion of the privilege is a cover for co-operation in wrongdoing.'" *Id.* at 972 (citation omitted).

[26] *In re Nassau Cty. Grand Jury Subpoena Duces Tecum Dated June 24, 2003*, 830 N.E. 2d 1118, 1126 (N.Y. Ct. App. 2005) (cleaned up); *see also Libaire v. Kaplan*, 760 F. Supp. 2d 288, 295 (E.D.N.Y. 2011) (quoting *In re Grand Jury Subpoena Served Upon John Doe*, 781 F.2d 238, 247 (2d Cir. 1986) (*en banc*)) ("We consistently have held that, absent special circumstances, client identity and fee information are not privileged."). For the avoidance of doubt, client identities are also not privileged under California law. *See Hays v. Wood*, 25 Cal. 3d 772, 785 (1979) ("It is well established that the attorney-client privilege, designed to protect communications between them, does not ordinarily protect the client's identity.")

[27] *See* ECF No. 91, 11/15/2019 Hrg. Tr. at 53 (compelling Defendants to produce financial information to MabVax and noting: "I believe that the protective order jointly submitted by the parties in this case can address the privacy interests here").

Jacob A. Walker (CA Bar No. 271217)
Lauren Godles Milgroom (*pro hac vice*)
Amanda Crawford (*pro hac vice*)
260 Franklin Street, Suite 1860
Boston, MA 02110
(t) (617) 398-5600
(f) (617) 507-6020
jason@blockesq.com
joel@blockesq.com
jake@blockesq.com lauren@blockesq.com
amanda@blockesq.com

*Attorneys for Plaintiff MabVax Therapeutics Holdings, Inc.*

## II. DEFENDANT SICHENZIA ROSS FERENCE LLP'S POSITION

### A. <u>Interrogatory No. 1 Seeks Privileged, Overbroad and Speculative Information</u>

Plaintiff's interrogatory No. 1 seeks not only the names of SRF clients who are beneficial owners of MabVax, but also the names of clients who provide or provided "professional services to MabVax" over a ten year period from January 1, 2010 to the date of SRF's answers to the interrogatories.

First, the identify of SRF's clients is protected. Pursuant to New York law, the identity of an attorney's clients *who are not also parties to the action* is privileged.[28] See *Matter of Jacqueline F.*, 391 N.E.2d 967, 970 (1979) (the rule requiring disclosure is generally applied only where the client whose identity is sought is a party to the pending civil litigation and the circumstances otherwise warrant such disclosure). Plaintiff seeks to minimize the holding in *Matter of Jacqueline F.*, by reference to later cases, however, *Matter of Jacqueline F.* remains the law in New York. Moreover, the cases cited did not disagree that client identity is privileged under special circumstances.[29]

---

[28] To the extent that California law is in conflict or warrants a different result, New York law should govern. *See Isuzu Motors Ltd. v. Consumers Union of U.S.*, 12 F. Supp. 2d 1035, 1043-44 (C.D. Cal. 1998) (court must make separate choice-of-law inquiry with respect to each issue in a case). Given the conflict between New York and California law, and New York's interest in regulating laws pertaining to New York attorneys and their clients, New York law should apply. Plaintiff cites *Hays v. Woods,* 25 Cal.3d 772, 785 (1979) arguing under California law, the attorney-client privilege normally does not protect the client's identify. However, New York law supports that a non-party client's identity is generally privileged. (See *Matter of Jacqueline F.*, 391 N.E.2d at 970.). Regardless, to the extent this court finds that California law applies, information regarding SRF's clients is also protected by their third party right of privacy. (See *Hooser v. Superior Court*, *Hooser v. Superior Court* (2000) 84 Cal.App.4th 997, 1002 (client names are protected under the right to privacy under the California State Constitution) and *Tien v. Superior Court* (2006) 139 Cal.App.4th 528.)

[29] None of the cases cited by plaintiff apply here. *In re Nassau County Grand Jury*, 797 N.Y.S.2d 790 (N.Y. May 3, 2005) involved a grand jury subpoena in a criminal action seeking production of firm financial records over a two year period, which necessarily involved information regarding the identify of clients and fees paid to the firm. Similarly, in *Libaire v. Kaplan*, 760 F.Supp.2d 288 (E.D. N.Y. Jan. 19, 2011) the court found that there was no showing that a request for a firm's financial documents to satisfy a judgment debtor examination sought privileged information. Here, plaintiff is requesting that SRF specifically identify all clients over a 10 year period, which have no relation to the claims

Here, however, plaintiff has failed to establish how SRF's representation of clients over a ten year year period is critical to this action to overcome the privilege or privacy rights of SRF's other clients.[30]  As such, SRF has a duty to maintain the confidentiality of its client information and assert this privilege on their behalf.[31]

Contrary to plaintiff's argument, SRF did not waive their clients' rights to assert the attorney-client privilege by listing some of the names of its clients whose documents were inadvertently produced in its motion for return of privileged materials.  The attorney-client privilege belongs to the client, not the attorney, who is bound to assert it.(See Fn. 31.) Moreover, identifying the names of some clients in a sealed document for purposes of compelling return of privileged materials does not support a waiver of privilege as to all other client's identities for use in this action, nor do the cases cited by plaintiff so hold.

Second, Plaintiff fails to list the entities or persons it claims were beneficial owners of MabVax.  In order to actually respond to this interrogatory, SRF would need to know the names of each individual and entity beneficial owner of  MabVax over the 10 year period sought, which is wholly in the possession of Plaintiff, not Defendants.[32]  Contrary to Plaintiff' argument, SRF is not required to conduct

in this action, and thus not warranted.

[30] SRF represented MabVax from April 2, 2015 to May 23, 2018, and already disclosed certain clients (who SRF had knowledge were MabVax investors or related to MabVax) in its engagement agreements, as indicated in its response to these interrogatories.  (See pltff Exh. C, pg. 5.)  Clearly, at minimum, any clients SRF represented after its engagements with MabVax ended are irrelevant to any issue in this matter.

[31] Under either New York or California law, the attorney-client privilege is held by *clients*, and cannot be waived by the attorney - who is not the holder of the privilege.  (See Rule 1.6 of the NY Rules of Prof. Conduct;  CPLR § 4503;  *Carte Blanche PTE., Ltd. V. Diners Club Int'l, Inc.,* 130 F.R.D. 28, 31 (S.D.N.Y. 1990 "the attorney-client privilege can be waived only by the client and cannot be waived by counsel";  and *M.T. Packaging, Inc. v. Maidenbaum & Assoc., P.L.L.C.,* 2018 N.Y. Slip Op. 30601[U], at *3 (Sup. Ct., N.Y. Cnty. 2018.);  Also see Rule 1.6 of the California Rules of Professional Conduct and §6068(e)(1) of the California Business and Professions Code;  Cal. Evid. Code 953;  and Cal. Evid. Code 954-55 (attorney may claim privilege on client's behalf).

[32] As of Mabvax's Form 10-K, filed as of March 14, 2016, there were 151 stockholders of record, and shares of commons stock are held by financial institutions as nominees for

1   extensive searches of documents that are not in its possession, custody or control,

2   especially given the significant number of stockholders of record, which is a much

3   smaller number than beneficial owners.  Recognizing the significant number of its

4   own beneficial owners, Plaintiff attempts to drown SRF in discovery and demands

5   SRF conduct a search of public databases, which is both unreasonable and

6   contumacious conduct. [33]

7        Third, Plaintiff demands the names of SRF clients who also happened to have

8   provided "professional services to MabVax" at some point during the 10 year period

9   requested in the interrogatories. Notwithstanding that the identity of SRF's clients are

10  privileged, Plaintiff again fails to provide the names of the individuals or entities that

11  provided "professional services" to MabVax, or provide a definition of "professional

12  services." Nonsensically and without basis, Plaintiff expects SRF to know all persons

---

14  beneficial owners.  (See Decl. Bertsche, ¶ 9)

15  [33] Fed. R. Civ. P. 26(b)(1) [in determining what information is subject to discovery
    requests, the court among the factors considered are "the parties' relative access to relevant
16  information, the parties' resources..."  The court may limit the discovery if it finds "the
    discovery sought is unreasonably cumulative or duplicative, or can be obtained from some
17  other source that is more convenient, less burdensome, or less expensive…" *Fed. R.
    Civ.P. 26(b)(2)(C)(i)*;   "A responding party is not generally required to conduct extensive
18  research in order to answer an interrogatory, but a reasonable effort to respond must be
    made."  *Haney v. Saldana,* 2010 U.S. Dist. LEXIS 93447, *8, *citing L.H. v.*
19  *Schwarzenegger*, No. S-06-2042 LKK GGH, 2007 U.S. Dist. LEXIS 73752, 2007 WL
    2781132, *2 (E.D. Cal. Sep. 21, 2007).  "Discovery does not mean that a party should have
20  to prepare the other party's case. A responding party is generally not required to perform
    extensive research to acquire requested information." *L.H. v. Schwarzenegger,* 2007 U.S.
21  Dist. LEXIS 73752, *9.   In California, the burden of research is "on the propounder of the
    interrogatory where the records from which the research is to be done are equally available
22  to him." *Bunnell v. Superior Court of Alameda County*, 254 Cal. App. 2d 720, 724 (1967).
    Also see *Gorrell v. Sneath,*  292 F.R.D. 629, 639 (E.D. Cal. April 2013) [ the court
23  sustained defendants objection that plaintiff's interrogatory, "identify any requirements of
    the BOP contract that conflict with those standards set by SAMHSA" is overly broad and
24  burdensome.  The court found that requiring the defendant to review *all* possible
    SAMSHA/DHHS standards and compare them with the BOP contract would be
25  burdensome and would produce irrelevant information ].

or entities that provided professional services to Mabvax over a ten year period.  SRF maintains no such records.  Based on the foregoing infirmities, plaintiff's motion with respect to Interogatory No. 1 should be denied.

**B.**  **Interrogatory No. 2 is Overbroad, Burdensome, Seeks Information Which is Available to Plaintiff, and Seeks Privileged Information**

Like Interrogatory No. 1, Interrogatory No. 2 is convoluted, overbroad, and seeks information that is not within SRF's possession, custody or control but is wholly in the possession of Plaintiff.  Plaintiff seeks the names of all entities in which, during a ten year period, a MabVax Investor has or had an interest in and a) SRF also has or had a beneficial interest, or b) SRF represented.  However, in order to comply with either part of this interrogatory, SRF would first need to know the names of all entities in which each MabVax benefical owners had invested in during the 10 year period, so that they could then determine whether they also held shares in those entities or represented those entities.  SRF maintains no such list, and such request highlights the nature of Plaintiff's overbroad and unreasonable discovery attack on SRF.  Plaintiff is not seeking information about SRF's alleged representation of certain of the Investors (the alleged basis of its conflict of interest allegations) but rather the entities that those Investors maintained an ownership interest in.  SRF does not maintain records of who else may have held stock in all of the companies in which they have ever held any shares in or represented, nor would it be reasonable to expect this.[34]

Information in which entities that both a MabVax Investor and SRF ever held shares in over a 10 year period is also not proportional to the needs of this case, as it seeks information which has no relevance to SRF's representation of MabVax.[35]

---

[34] While SRF maintains a list of its clients, such a list could not be linked to entities in which a MabVax Investor may have held shares in, nor would SRF, or any company, maintain a list of all investors in companies in which they may have held shares in at some point.  (Decl. Bertsche, ¶ 7.)

[35] SRF never owned shares in any of the Investor entities identified by plaintiff in their interrogatories who invested in MabVax.  Whether or not SRF at one point in time owned

1    While SRF has a duty to conduct a reasonable investigation in order to respond

2   to interrogatories, contrary to plaintiff's argument, it would not be possible for SRF

3   investigate *every entity that an Investor maintains or maintained a beneficial interest*

4   *in over the past 10 years*. (See Fn. 32-35) The cases cited by plaintiff do not impose a

5   duty on a party to scour public records in order to respond to interrogatories, and

6   instead discuss that a party should conduct a reasonable investigation of its own

7   books and records which are within its possession, custody or control, which includes

8   that of its agents.[36]

9    However, in an effort to meet and confer with counsel to further respond to

10   Interrogatory No. 2, defense counsel requested that plaintiff provide a list of all of the

11   relevant entities they believe the MabVax Investors invested to which SRF could then

12   respond whether they have also held shares in those same entities for a more limited

13   time period.  Plaintiff refused.  As a compromise, SRF conducted a search of the

14   entities referenced by Plaintiff in footnote 10, page 14 of the complaint, which

15   Plaintiff claims a MabVax Investor held shares in, and provided a list of those entities

16   to Plaintiff which SRF or its predecessor firm had also held shares at some point

17   during the requested time frame.

18    With regard to the second portion of Interrogatory No. 2 requesting the names

19   of SRF clients, SRF incorporates its arguments above that this information is

20   privileged or otherwise protected.  Based on the foregoing, SRF requests that this

21   Court deny plaintiff's motion as to Interrogatory No. 2.

22   _____

23   a share in an entity that a MabVax Investor also happened to invest in at the same or
another point in time has no bearing on any issue in this case, as SRF would not

24   necessarily know this information, nor would this generally create a conflict of interest.

25   [36]  For instance, based on the overbroad nature of plaintiff's interrogatory, if a MabVax
investor owned shares in Starbucks, and SRF also happened to own shares in Starbucks at

26   some point over the last 10 years, SRF would be required to find and disclose this
information.   Moreover, is is also important to note that a search of public records may not

27   even reveal all entities requested in Interrogatory No. 2, given the definition of "Investor" to
also include "any other person or entity controlled by the Investors or in which any of the

28   Investors has a 'beneficial interest.'"  (Plaintiff's Exh. A, pg. 4, ¶ 9.)

1    DATED: January 13, 2020          LEWIS BRISBOIS BISGAARD & SMITH LLP

2

3
                                      By:      /s/ Corinne C. Bertsche
4                                           Mark K. Anesh
                                            Corinne C. Bertsche
5                                           Attorneys for Defendant SICHENZIA
                                            ROSS FERENCE LLP
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.  DEFENDANT HARVEY KESNER'S POSITION

Plaintiff's Interrogatory Nos. 1 and 2 suffer from numerous serious defects, thus they are impossible to answer. The Interrogatories require Mr. Kesner to, for the last ten years,[37] speculate and potentially conduct extensive research for information not within his possession or control. Mr. Kesner cannot possibly know who is or was a beneficial owner of MabVax securities. Such information is uniquely known to those particular beneficial owners by their own investment records only, and is not known by Mr. Kesner. Defendant is not required to conduct extensive research into information known only to third-parties, obtain private brokerage account and stock exchange records or reach legal conclusions and advise Plaintiff on legal matters. Plaintiff also requests Mr. Kesner to identify his clients but Mr. Kesner is bound by professional conduct rules and does not have consent from his clients to disclose their identity, and disclosure of client identity is not permissible under New York or California law under the present circumstances.[38]

**Interrogatory No. 1.** This interrogatory requests the following:

> Identify each Person or entity for whom You serve or served as legal counsel who is or was a beneficial owner of MabVax securities and/or provides or provided other professional service to MabVax and for each Person or entity identified, please provide the start and end dates of your representation.[39]

---

[37] Plaintiff's discovery states the relevant time period as "January 1, 2010 through the date of Your Answers" (Ex. 1). Plaintiff has been unwilling to shorten this time period even though Kesner's engagement commenced April 2015.

[38] Further, contrary to Plaintiff's contentions, in ruling on Defendants' motion to dismiss, Judge Hayes did not make findings of fact as no facts have been introduced into evidence. Rather, Judge Hayes was required to accept Plaintiff's allegations as true only for the purposes of determining whether the allegations were "plausible", the threshold standard that could allow a facially deficient complaint to survive a motion to dismiss.

[39] *See* Ex. 1.

1    Every part of this interrogatory is problematic. First, the time period is

2    overbroad. Defendants represented Plaintiff from April 2, 2015 to May 23, 2018.

3    There is no reason to extend the time frame outside of the date of representation.

4    Second, the identity of Kesner's clients is protected. Client names are

5    protected under the right to privacy under the California State Constitution.[40] The

6    California Business and Professions Code provides it is the duty of an attorney "[t]o

7    maintain inviolate the confidence, and at every peril to himself or herself, to

8    preserve the secrets, of his or her client."[41] Rule 1.6 of the California Rules of

9    Professional Conduct further provides a lawyer shall not reveal confidential

10   information.[42] Under New York law, the identity of clients *not parties to the action*

11   is privileged, "absent other circumstances, an attorney cannot be compelled to reveal

12   a client's identity where the latter is not a party to a pending litigation. [citation

13   omitted].[43] None of the cases cited by Plaintiff disagrees with this holding and those

14   cases in fact acknowledge that under certain circumstances client identity is

15   privileged.[44] Further, Rule 1.6(a) of the New York Rule of Professional Conduct

16   provides that a lawyer **shall not** reveal confidential information.[45]

---

[40] *Hooser v. Superior Court*, *Hooser v. Superior Court* (2000) 84 Cal.App.4th 997, 1002, 101 Cal.Rptr.2d 341("the identity of an attorney's clients is sensitive personal information that implicates the clients' rights of privacy").

[41] Ca. Bus. & Prof. Code §6068(e)(1) (2019).

[42] Ca. R. of Prof. Cond. R. 1.6(a) ("A lawyer shall not reveal information protected from disclosure by Business and Professions Code section 6068, subdivision (e)(1) unless the client gives informed consent….")

[43] *Matter of Jacqueline F.*, 391 N.E.2d 967, 970 (1979).

[44] *In Re Grand Jury Subpoena Served Upon John Doe*, 781 F.2d 238, 247 (2d Cir. 1986) (*en banc*)) (client identity not privileged "absent special circumstances").

[45] 22 NYCRR 1200.0 Rule 1.6. (a) ("A lawyer shall not knowingly reveal confidential information, as defined in this Rule, or use such information to the disadvantage of a client or for the advantage of the lawyer or a third person, unless: (1) the client gives informed consent, as defined in Rule 1.0(j)….")

Third, Kesner is not required to conduct a factual or legal analysis to determine "beneficial owners" of Plaintiff or provide plaintiff his legal opinion. To complicate this interrogatory further, Plaintiff requests Kesner to identify only clients who are "beneficial owners" of Plaintiff and requires Kesner to determine who are the "beneficial owners". During the meet and confer process, Plaintiff defined "beneficial owner" as the term is defined in 17 CFR § 240.13d-3. (*See* Ex. 2; Statute). To determine whether a person (or entity) was a "beneficial owner" of MabVax securities during the last ten years, Kesner would require access to records showing the person's investments and confidential brokerage and stock exchange records. The term beneficial ownership, as defined, is applicable to publicly traded companies with thousands or tens of thousands of anonymous shareholders that changes from trading each day. The identities are constantly changing as are the beneficial ownership records held by brokerage firms, and trading records are in non-personal unidentifiable form, unknown to exchanges, the issuers of securities and the public. Kesner does not have this information and he is not required to issue subpoenas or otherwise seek to obtain it. "[A] responding party is generally not required to perform extensive research to acquire requested information."[46] Kesner would then have to perform an in-depth investigation to determine whether any such person satisfies the legal definition and criteria cited if required to respond. These are activities best suited to Plaintiff's experts.

Fourth, Plaintiff did not provide a definition of "professional services". According to Merriam-Webster "professional service" is defined as a "service requiring specialized knowledge and skill usually of a mental or intellectual nature and usually requiring a license, certification, or registration."[47] Kesner is not

---

[46] *L.H. v. Schwarzenegger*, No. S–06–2042 LKK GGH, 2007 WL 2781132, *2 (E.D.Cal. Sep.21, 2007); *also see Gorrell v. Sneath*, 292 F.R.D. 629, 629 (E.D. Cal. Apr. 5, 2013).

[47] *See* "professional service." *The Merriam-Webster.com Legal Dictionary, Merriam-Webster Inc.*, https://www.merriam-webster.com/legal/professional%20service. Accessed 10 January 2020.

required to determine whether any of his clients over the past ten years performed for Plaintiff a service requiring specialized knowledge and skill of a mental or intellectual nature and then further gather facts and analyze whether any such client is also a "beneficial owner" of Plaintiff's securities. Plaintiff contends it is aware of two entities that fall into this category, but this begs the question as to why this interrogatory is so broad and not limited to those two entities.

Notwithstanding this, Kesner identified certain clients that publicly reported beneficial ownership of Plaintiff's securities or were known to be investors, who consented to such identification and provided their own conflict waivers allowing Kesner to identify them to Plaintiff, who were thereupon identified by name in Kesner's Firm's pre and post engagement retainer letters.  Such letters sought from Plaintiff and received specific explicit written acknowledgement of representation and approval by Plaintiff, repeatedly.  Plaintiff is fully aware of and possesses all the documentation that Plaintiff's senior executive officers, by their physical signatures, was relied upon by Mr. Kesner as the disclosure and waiver of potential conflicts for representation of beneficial owners of Plaintiff.

**Interrogatory No. 2:** Plaintiff's Interrogatory No. 2 states:

> Identify all entities in which (A) any Investor owns or owned a beneficial interest and (B) (i) You own or owned a beneficial interest or (ii) You serve or served as legal counsel.[48]

This interrogatory is also as problematic as it is confusing, overbroad, and unduly burdensome. First, the time period is overbroad. There is no reason to extend the applicable time outside of the date of representation. Second, Plaintiff did not define "Investor" or "beneficial interest". During the meet and confer process, Plaintiff defined "Investors" to include ***over forty*** individuals and entities including

---

[48] *See* Ex. 1.

"any other person or entity controlled by the Investors or in which any of the Investors has a 'beneficial interest'", information that is also not in his purview or control. (*See* Ex.1). Plaintiff similarly defined "beneficial interest" to mean "beneficial ownership" as defined under 17 CFR § 240.13d-3. As discussed, Kesner is not required to conduct extensive research including on-line searches in public databases over the last ten years to determine if any Investor had a "beneficial interest" in Plaintiff, even if such information was publicly available on such databases or in SEC filings.[49] Kesner is further not required to research and cannot possibly know the forty Investors to determine if they "control" another person or entity through private agreements, and then opine on whether those persons or entities have a "beneficial interest" in Plaintiff.

Third, as discussed, the identity of Kesner's clients is protected and Kesner could violate rules of professional conduct by disclosing the identity of clients absent client consent. Finally, the interrogatory does not seek information relating to Plaintiff and instead seeks information regarding persons over the past ten years that may have no relation to Plaintiff. Notwithstanding this, Kesner is listed as an Investor and identified two entities which invested in Plaintiff with full knowledge, acceptance, approval and gratitude of Plaintiff, as well as fee conversion agreements signed by Plaintiff in which Plaintiff accepted the waiver of extensive amounts due and owing for legal services and issued its securities to Defendants.

Based on the above, Kesner requests the Court deny Plaintiff's motion to compel responses to Interrogatories Nos. 1 and 2.

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI

Dated: January 13, 2020

---

[49] *L.H. v. Schwarzenegger*, No. S–06–2042 LKK GGH, 2007 WL 2781132, *2 (E.D.Cal. Sep.21, 2007); *Gorrell v. Sneath*, 292 F.R.D. 629, 629 (E.D. Cal. Apr. 5, 2013).

1170042/49426985.1

By: _/s/ Tamara A. Seelman_____

Attorneys for Defendant
HARVEY KESNER

# EXHIBIT 1

# TO

# HARVEY KESNER'S INSERT

Jason M. Leviton (*pro hac vice*)
Joel A. Fleming (CA Bar No. 281264)
Jacob A. Walker (CA Bar No. 271217)
Lauren Godles Milgroom (*pro hac vice forthcoming*)
Amanda R. Crawford (*pro hac vice forthcoming*)
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(t) (617) 398-5600
(f) (617) 507-6020
jason@blockesq.com
joel@blockesq.com
jake@blockesq.com
lauren@blockesq.com
amanda@blockesq.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MABVAX THERAPEUTICS HOLDINGS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SICHENZIA ROSS FERENCE LLP (f/k/a SICHENZIA ROSS FERENCE KESNER LLP; f/k/a SICHENZIA ROSS FRIEDMAN FERENCE LLP) and HARVEY KESNER, <br><br> Defendants. | Case No.:  3:18-cv-02494-WQH-MSB <br><br> **[SECOND REVISED] PLAINTIFF'S FIRST SET OF INTERROGATORIES DIRECTED TO DEFENDANT HARVEY KESNER** |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff MabVax Therapeutics Holdings, Inc. hereby submits the following Interrogatories to be answered by Defendant Harvey Kesner.

**I.      DEFINITIONS**

1.      "All" and "each" shall be construed as "all and each."

2.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Interrogatories all responses that might otherwise be construed to be outside of its scope.

3.      "Communication" or "Communications" means any exchange of information by any means of transmission, sending or receipt of information of any kind by or through any means including, but not limited to, speech, writings, Documents, language (machine, foreign, or otherwise) of any kind, computer electronics or Electronic Data, sound, radio, or video signals, telecommunication, telephone, text message, facsimile, telegram, photographic film of all types, or other media of any kind.  "Communication" also includes, but is not limited to, all inquiries, discussions, conversations, correspondence, negotiations, agreements, understandings, meetings, notices, requests, responses, demands, complaints, or press, publicity, or trade releases.

4.      The term "relating to" means referring to, referencing, describing, evidencing, or constituting.

5.      "Document" or "Documents" is intended to be interpreted in the broadest possible sense and includes, but is not limited to, all Electronic Data and all Communications which are stored, or retrievable, or recorded in any manner and also includes, but is not limited to, any writing or other record of information or images, including, but not limited to, print, handwriting, photographs, film, recordings, memoranda, books, records, accounts, ledgers, vouchers, invoices, drafts, bills, charge slips, letters, electronic mail or "e-mail," text messages (including, but not limited to, messages sent through instant messaging apps such as, but not limited to, Apple iMessage, Google Chat or WhatsApp), compact discs, CD-ROMs, magnetic tape, videotape, magnetic or optical disks, "floppy disks," "PowerPoint" or other presentation software systems,

2

telegrams, mailgrams, correspondence, notes and minutes of meetings, conversations or telephone calls, resolutions, interoffice memoranda, work papers, reports, projects, tabulations, studies, surveys, legal complaints and other pleadings, affidavits, interrogatories, legal briefs, legal motions, judgments, designs, drawings, schematics, maps, manuals, models, notebooks, contracts, agreements, diaries, telephone records, desk calendars, appointment books, circulars, charts, transcripts, news releases, trade releases, advertisements, press books, teletype messages, licenses, financial statements, stenographers' notebooks, punchcards, computer printouts and data, telecopier or facsimile transmissions and printouts, letters of credit, stock certificates, and securities. "Document" also includes preliminary drafts, revisions, or copies of any such Document, if the copy is in any way different from the original, now in Your possession, custody, or control, or in the possession, custody, or control of Your advisors, agents, employees, representatives, trustees, counsel, or other Persons acting or purporting to act on Your behalf.

6.    "Electronic Data" means any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), of mechanical, facsimile, electronic, magnetic, digital, or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including word processing Documents, spreadsheets, database files, charts, graphs and outlines, electronic mail or "e-mail," text message, personal digital assistant messages, instant messenger messages, operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file layouts, and any and all miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, deleted file, or file fragment. "Electronic data" also includes any and all items stored on computer memory or memories, hard disks, floppy disks, zip drives, CD-ROMs, Bernoulli Boxes and their equivalents, magnetic tapes of all types and kinds, microfiche, punched cards, punched tape, computer chips (including, but

not limited to, EPROM, PROM, ROM, or RAM of any kind) on or in any other vehicle for digital data storage or transmittal, files, folder tabs, or containers, and labels appended to or associated with any physical storage device associated with each original and each copy.

7.    "Identify" when used with respect to (a) a natural person, means the following information shall be provided: the natural person's full name, job title, employer during the period referred to, current or last known home address, telephone number, business address and telephone number, and e-mail address(es); (b) any entity other than an individual, means the following information shall be provided: the entity's full name and current or last known address; and (c) a Document, means the following information shall be provided: the date, title, subject matter, author(s), recipient(s), and Bates number(s).

8.    "Interrogatory" or "Interrogatories" means each one of the specific interrogatories set forth herein.

9.    "Investor" or "Investors" means any and/or all of Barry Honig, Renee Honig, Jonathan Honig, John Stetson, Michael Brauser, John O'Rourke III, Phillip Frost, Mark Groussman, Steven Rubin, John H. Ford, Robert Prag, Robert Haag, and Andrew Haag, as well as Harvey Kesner, Michael Ference and any other person or entity controlled by the Investors or in which any of the Investors has a beneficial interest, including, without limitation, GRQ Consultants, Inc. ("GRQ"), GRQ Consultants, Inc. 401K ("GRQ 401K"), GRQ Consultants, Inc. Roth 401K FBO Barry Honig ("GRQ Barry"), GRQ Consultants, Inc. Roth 401K FBO Renee Honig ("GRQ Renee"), Barry and Renee Honig Charitable Foundation, Inc. ("Honig Foundation"), Southern Biotech, Inc. ("Southern Biotech"), HS Contrarian Investments, LLC ("HSCI"), Grander Holdings, Inc. ("Grander"), Grander Holdings, Inc. 401K ("Grander 401K"), Airy Properties ("Airy"), 11 East Airy Street Partnership ("11 East"), ATG Capital, LLC ("ATG"), OPKO, Inc. ("Opko"), Frost Gamma Investments Trust ("FGIT"), Melechdavid, Inc. ("Melechdavid"), Melechdavid, Inc. Retirement Plan ("MRP"), Alpha Capital Anstalt ("Alpha"), The Del Mar Consulting Group, Inc. ("Del Mar"), The Del Mar Consulting Group, Inc. Retirement Plan Trust ("Del Mar Trust"), IRTH Communications, LLC ("Irth"), Stetson Capital

Investments Inc. ("SCI"), Darwin Investments LLC ("Darwin"), Darwin Retirement Investments, LLC ("Darwin Retirement"), Darwin Ret LLC ("Darwin Ret"), Paradox Capital Partners LLC ("Paradox"), and Denville and Dover Fund LLC ("Denville").

10.    "Person" or "Persons" means natural persons, as well as private or public corporations, firms, partnerships, associations, institutions, joint ventures, governmental entities, administrative agencies, and professional associations, or other form of business or legal entity, as well as the representative(s) of any such Person.

11.    The terms "You" and "Your" mean the party to whom this request is directed, and his agents, employees, officers, directors, parent companies, subsidiaries, representatives, attorneys, and any other Person acting on his behalf.

## II.    INSTRUCTIONS

1.    In responding to the following Interrogatories, You are required to provide all information that is in Your actual or constructive possession, custody, or control or that is in the possession, custody or control of all predecessors, successors, parents, subsidiaries, divisions, or affiliates, directors, officers, agents, employees, attorneys, accountants, representatives or other Persons acting on Your behalf.

2.    If, in responding to these Interrogatories, You claim any ambiguity in an Interrogatory, or in a Definition or Instruction applicable to an Interrogatory, such claim shall not be utilized as basis for refusing to respond, but You shall set forth as part of Your response the language deemed to be ambiguous and the interpretation used in responding to the Interrogatory.

3.    Each Interrogatory must be answered separately and fully in writing under oath, unless You object to it, in whole or in part. If an objection is made to an Interrogatory or to a part of an Interrogatory, the specific ground for the objection shall be set forth clearly. If an objection is based on a claim of privilege or other protection, the particular privilege or protection invoked shall be clearly stated.

4.    If only part of an Interrogatory is objectionable, the remainder of the Interrogatory shall be answered.

5.      If an Interrogatory cannot be answered completely, it must be answered to the fullest extent possible. If You do not have personal knowledge sufficient to respond fully to an Interrogatory, You shall so state, but shall make reasonable and good faith effort to obtain the information by inquiry to other Persons who may have personal knowledge sufficient to respond.

6.      If a Document is provided in response to an Interrogatory, Identify the Document by providing the applicable Bates number and organize and label the Document to correspond with the Interrogatory number. If the Document is being produced in its native electronic format (allowing the Document to retain its metadata), You shall Identify to which Interrogatory the Document is responsive.

7.      These Interrogatories are continuing in nature so that if You subsequently discover or obtain any responsive information previously inquired of or required to be produced, You shall promptly supplement or amend Your previous response, disclosing the subsequently discovered or obtained information.

## III.   RELEVANT TIME PERIOD

Unless otherwise specified, the relevant time period covered by these Interrogatories is January 1, 2010, through the date of Your answers (the "Relevant Time Period"). If any information before this period is necessary for a correct or complete understanding of Your answer, You must include the earlier information as well.

## IV.   INTERROGATORIES

**Interrogatory No. 1:**

Identify each Person or entity for whom You serve or served as legal counsel who is or was a beneficial owner of MabVax securities and/or provides or provided other professional services to MabVax and for each Person or entity identified, please provide the start and end dates of your representation.

**Interrogatory No. 2:**

Identify all entities in which (A) any Investor owns or owned a beneficial interest and (B) (i) You own or owned a beneficial interest or (ii) You serve or served as legal counsel.

**Interrogatory No. 3:**

State all facts supporting each of Your affirmative defenses.

**Interrogatory No. 4:**

State all facts supporting Your statement in paragraph 7 of Your Answer that "the investors learned that Plaintiff considered Southern Biotech's transfer to have 'inadvertently terminated' a critical consent right came not from Kesner or the Firm but from direct communications between the investors and David Hansen, Plaintiff's CEO, and is referenced in numerous email communications."

DATED:  December 6, 2019

                                    BLOCK & LEVITON LLP

                            By: */s/ Joel Fleming*
                                 Jason M. Leviton (*pro hac vice*)
                                 Joel A. Fleming (CA Bar No. 281264)
                                 Jacob A. Walker (CA Bar No. 271217)
                                 Amanda R. Crawford (*pro hac vice forthcoming*)
                                 Lauren Godles Milgroom (*pro hac vice forthcoming*)
                                 260 Franklin Street, Suite 1860
                                 Boston, MA 02110
                                 (t) (617) 398-5600
                                 (f) (617) 507-6020
                                 jason@blockesq.com
                                 joel@blockesq.com
                                 jake@blockesq.com
                                 lauren@blockesq.com
                                 amanda@blockesq.com

                                 *Attorneys for Plaintiff*

INTERROGATORIES                                CASE NO. 3:18-CV-02494-WQH-MSB

# EXHIBIT 2

# TO

# HARVEY KESNER'S INSERT

# 17 CFR § 240.13d-3 - Determination of beneficial owner.

CFR    Table of Popular Names

## § 240.13d-3 Determination of beneficial owner.

**(a)** For the purposes of sections 13(d) and 13(g) of the Act a beneficial owner of a security includes any person who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise has or shares:

> **(1)** Voting power which includes the power to vote, or to direct the voting of, such security; and/or,

> **(2)** Investment power which includes the power to dispose, or to direct the disposition of, such security.

**(b)** Any person who, directly or indirectly, creates or uses a trust, proxy, power of attorney, pooling arrangement or any other contract, arrangement, or device with the purpose of effect of divesting such person of beneficial ownership of a security or preventing the vesting of such beneficial ownership as part of a plan or scheme to evade the reporting requirements of section 13 (d) or (g) of the Act shall be deemed for purposes of such sections to be the beneficial owner of such security.

**(c)** All securities of the same class beneficially owned by a person, regardless of the form which such beneficial ownership takes, shall be aggregated in calculating the number of shares beneficially owned by such person.

**(d)** Notwithstanding the provisions of paragraphs (a) and (c) of this rule:

> **(1)**

>> **(i)** A person shall be deemed to be the beneficial owner of a security, subject to the provisions of paragraph (b) of this rule, if that person has the right to acquire beneficial ownership of such security, as defined in Rule 13d-3(a) (§ 240.13d-3(a)) within sixty days, including but not limited to any right to acquire: (A) Through the exercise of any option, warrant or right; (B) through the conversion of a security; (C) pursuant to the power

to revoke a trust, discretionary account, or similar arrangement; or (D) pursuant to the automatic termination of a trust, discretionary account or similar arrangement; provided, however, any person who acquires a security or power specified in paragraphs (d)(1)(i)(A), (B) or (C), of this section, with the purpose or effect of changing or influencing the control of the issuer, or in connection with or as a participant in any transaction having such purpose or effect, immediately upon such acquisition shall be deemed to be the beneficial owner of the securities which may be acquired through the exercise or conversion of such security or power. Any securities not outstanding which are subject to such options, warrants, rights or conversion privileges shall be deemed to be outstanding for the purpose of computing the percentage of outstanding securities of the class owned by such person but shall not be deemed to be outstanding for the purpose of computing the percentage of the class by any other person.

**(ii)** Paragraph (d)(1)(i) of this section remains applicable for the purpose of determining the obligation to file with respect to the underlying security even though the option, warrant, right or convertible security is of a class of equity security, as defined in § 240.13d-1(i), and may therefore give rise to a separate obligation to file.

**(2)** A member of a national securities exchange shall not be deemed to be a beneficial owner of securities held directly or indirectly by it on behalf of another person solely because such member is the record holder of such securities and, pursuant to the rules of such exchange, may direct the vote of such securities, without instruction, on other than contested matters or matters that may affect substantially the rights or privileges of the holders of the securities to be voted, but is otherwise precluded by the rules of such exchange from voting without instruction.

**(3)** A person who in the ordinary course of his business is a pledgee of securities under a written pledge agreement shall not be deemed to be the beneficial owner of such pledged securities until the pledgee has taken all formal steps necessary which are required to declare a default and determines that the power to vote or to direct the vote or to dispose or to direct the disposition of such pledged securities will be exercised, provided, that:

**(i)** The pledgee agreement is bona fide and was not entered into with the purpose nor with the effect of changing or influencing the control of the issuer, nor in connection with any transaction having such purpose or effect, including any transaction subject to Rule 13d-3(b);

**(ii)** The pledgee is a person specified in Rule 13d-1(b)(ii), including persons meeting the conditions set forth in paragraph (G) thereof; and

**(iii)** The pledgee agreement, prior to default, does not grant to the pledgee;

**(A)** The power to vote or to direct the vote of the pledged securities; or

**(B)** The power to dispose or direct the disposition of the pledged securities, other than the grant of such power(s) pursuant to a pledge agreement under which credit is extended subject to regulation T (12 CFR 220.1 to 220.8) and in which the pledgee is a broker or dealer registered under section 15 of the act.

**(4)** A person engaged in business as an underwriter of securities who acquires securities through his participation in good faith in a firm commitment underwriting registered under the Securities Act of 1933 shall not be deemed to be the beneficial owner of such securities until the expiration of forty days after the date of such acquisition.

(Secs. 3(b), 13(d)(1), 13(d)(2), 13(d)(5), 13(d)(6), 14(d)(1), 23; 48 Stat. 882, 894, 895, 901; sec. 203(a), 49 Stat. 704, sec. 8, 49 Stat. 1379; sec. 10, 78 Stat. 88a; secs. 2, 3, 82 Stat. 454, 455; secs. 1, 2, 3-5, 84 Stat. 1497; secs. 3, 18, 89 Stat. 97, 155 (15 U.S.C. 78c(b), 78m(d)(1), 89m(d)(2), 78m (d)(5), 78m(d)(6), 78n(d)(1), 78w)
[43 FR 18495, Apr. 28, 1978, as amended at 43 FR 29768, July 11, 1978; 63 FR 2867, Jan. 16, 1998]

## Easy AZ Probate - Probate Law Firm

We Offer Our Services At Low Flat Rates And Save Your Money.
easyazprobate.com

OPEN

## 💼 CFR Toolbox



Law about... Articles from Wex
Table of Popular Names
Parallel Table of Authorities
How current is this?

**Appendix A (Relevant Requests To and Objections By The Firm)**

**FIRM DOCUMENT REQUEST NO. 3**

Documents sufficient to identify all entities in which (A) any Investor owns or owned a beneficial interest and (B) (i) You own or owned a beneficial interest or (ii) You serve or served as legal counsel.

**RESPONSE TO FIRM DOCUMENT REQUEST NO. 3**

Objections: This request is overbroad, unduly burdensome and oppressive, unintelligible as phrased, and fails to describe with reasonable particularity each item or category of items to be inspected or produced, as required by Fed. R. Civ. Proc. 34(b)(1)(A). This request is also overbroad as to time, and vague and ambiguous as to "documents sufficient to identify all entities in which (A) any Investor owns or owned a beneficial interest" and as to "documents sufficient to identify all entities in which…(B) (i) You own or owned a beneficial interest or (ii) You served or served as legal counsel." It is unclear what specific information or documents this request is seeking, and appears to request documents showing any interest owned by any Investor in any and all entities and to identify all clients represented by SRF, regardless of whether related to this matter or not. This request also potentially invades SRF and third party's rights to privacy, including privacy rights of Investors and Sichenzia Ross Ference LLP and "its present and former partners, associates, employees, officers, directors, parent companies, subsidiaries, representatives, agents (including, but not limited to, attorneys, accountants, consultants, investment advisors or bankers), affiliates, any predecessor or successor law firm, and any other person or entity acting on its behalf" as "you" is defined in the document request. This request also may seek information which is protected by the attorney-client and work product privileges as to other clients unrelated to Mabvax, and may also seek information which is irrelevant to this action and is not calculated to lead to the discovery of admissible evidence. Given said objections, SRF is unable to respond to this request as stated.

**FIRM INTERROGATORY NO. 1**

Identify each Person or entity for whom You serve or served as legal counsel who is or was a beneficial owner of MabVax securities and/or provides or provided professional services to MabVax and for each Person or entity identified, please provide the start and end dates of your representation.

**RESPONSE TO FIRM INTERROGATORY NO. 1**

Objections: This interrogatory is overbroad, unduly burdensome as to the time frame requested, as it seeks information prior to and after defendant's representation of MabVax and information which is irrelevant and unrelated to the claims in this action. This interrogatory is also vague and ambiguous and calls for speculation as

to the meaning intended by plaintiff to the term "beneficial owner," or who plaintiff contends was a "beneficial owner" of MabVax, and as to which persons or entities "provides or provided professional services to MabVax." The terms "beneficial owner" and "professional services" is not defined in the interrogatories, and can have broad and varied meanings, rendering this interrogatory vague and ambiguous and subject to speculation. This interrogatory is also vague and ambiguous and overbroad as to the term "You" or "Your" since the definition includes "Firm" which has a much broader definition than Sichenzia Ross Ference LLP and its partners.

Defendant further objects on the basis that the interrogatory seeks information not within Defendant's personal knowledge or possession, to the extent plaintiff is seeking securities ownership information ascertained from stock-broker records and the monthly statements of ownership provided to "beneficial owners," not third-parties such as Defendant, from their brokerage firms where they hold securities.

Defendant further objects on the basis that this interrogatory seeks privileged or private information held by other clients. Pursuant to New York law, the identity of clients not parties to the action is privileged. *Matter of Jacqueline F.*, 391 N.E.2d 967, 970 (1979) (the rule requiring disclosure is generally applied only where the client whose identity is sought is a party to the pending civil litigation and the circumstances otherwise warrant such disclosure). Also see Rule 1.6 of the New York Rules of Professional Conduct. To the extent California law applies, Defendant objects on the basis that a client's identity is private information. See *Hooser v. Superior Court*, *Hooser v. Superior Court* (2000) 84 Cal.App.4th 997, 1002 (client names are protected under the right to privacy under the California State Constitution) and *Tien v. Superior Court* (2006) 139 Cal.App.4th 528. Also see Rule 1.6 of the California Rules of Professional Conduct and §6068(e)(1) of the California Business and Professions Code.

Defendant further objects on the grounds of attorney client and work product privileges to the extent discussions and analysis with another client (if any) regarding whether a client is or was a "beneficial owner" of MabVax securities would be privileged communications. In addition, those discussions are not relevant to the claims in this case.

Pursuant to said objections, Defendant is unable to fully comply with this interrogatory. Notwithstanding the foregoing objections, Defendant previously identified certain persons as clients of the Firm in its engagement letters with Plaintiff and received written conflict waivers from Plaintiff as to which identification the foregoing objections relating to identifying clients are not asserted.

**FIRM INTERROGATORY NO. 2**

Identify all entities in which (A) any Investor owns or owned a beneficial interest and (B) (i) You own or owned a beneficial interest or (ii) You serve or served as legal counsel.

**RESPONSE TO FIRM INTERROGATORY NO. 2**

Objections: This interrogatory is overbroad, unduly burdensome as to the time frame requested, as it seeks information prior to and after defendant's representation of MabVax and information which is irrelevant and unrelated to the claims in this action. This interrogatory is also compound. This interrogatory is also unduly burdensome and oppressive, vague and ambiguous, and calls for speculation as to the term "beneficial interest." This term is not defined by plaintiff, and can have broad and varied meanings, rendering this interrogatory vague and ambiguous and subject to speculation. This interrogatory is also vague and ambiguous and overbroad as to the term "You" or "Your" since the definition includes "Firm" which has a much broader definition than Sichenzia Ross Ference LLP and its partners. Defendant further objects to the extent the information sought is irrelevant and does not relate to Plaintiff's claims.

Defendant objects because the interrogatory seeks information not within Defendant's personal knowledge or possession. SRF is not able to accurately respond to this interrogatory, since SRF does not have sufficient information to "[i]dentify all entities in which … any Investor owns or owned a beneficial interest." As framed, "entities" could be any company that an Investor invested in. SRF does not have information about every such investment made by any Investor, the entities the Investors owned beneficial interests in, nor has plaintiff provided any list of the purported entities plaintiff is referring to in this interrogatory. To the extent plaintiff is not aware, plaintiff should obtain such information from the Investors, who have unique access to this information. Plaintiff should identify all entities in which it claims Investors own or owned a "beneficial interest," and specifically request whether SRF owned an interest in any such specific entities in subsequent interrogatories.

Defendant further objects on the basis that this interrogatory seeks privileged or private information held by other clients. Pursuant to New York law, the identity of clients not parties to the action is privileged. *Matter of Jacqueline F.*, 391 N.E.2d 967, 970 (1979) (the rule requiring disclosure is generally applied only where the client whose identity is sought is a party to the pending civil litigation and the circumstances otherwise warrant such disclosure). Also see Rule 1.6 of the New York Rules of Professional Conduct. To the extent California law applies, Defendant objects on the basis that a client's identity is private information. See *Hooser v. Superior Court, Hooser v. Superior Court* (2000) 84 Cal.App.4th 997, 1002 (client names are protected under the right to privacy under the California

State Constitution) and *Tien v. Superior Court* (2006) 139 Cal.App.4th 528. Also see Rule 1.6 of the California Rules of Professional Conduct and §6068(e)(1) of the California Business and Professions Code.

Pursuant to said objections, Defendant is unable to fully comply with this interrogatory. Notwithstanding the foregoing objections, Defendant previously identified certain entities as clients of the Firm in its engagement letters with Plaintiff and received written conflict waivers from Plaintiff as to which identification the foregoing objections relating to identifying clients are not asserted. Subject to Confidentiality pursuant to the Protective Order in this action, Defendant identifies the following of the "Investor" entities which were specifically identified by plaintiff in the definitions of these Special Interrogatories that either SRF invested in, or has knowledge that an SRF partner invested in: Paradox Capital Partners, LLC and Darwin Ret, LLC purchased securities of Plaintiff on behalf of Harvey Kesner with full knowledge, approval and written consent of Plaintiff.

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

**Appendix B (Relevant Requests To and Objections By Kesner)**

<u>**KESNER DOCUMENT REQUEST NO. 3**</u>

Documents sufficient to identify all entities in which (A) any Investor owns or owned a beneficial interest and (B)(i) You own or owned a beneficial interest or (ii) You serve or served as an attorney, officer, director, employee, manager, or agent.

<u>**RESPONSE TO KESNER DOCUMENT REQUEST NO. 3**</u>

Defendant objects to this Request because it is vague, ambiguous, overly broad and unduly burdensome because it does not limited by timeframe, scope or subject matter and because as discussed under General Objections, a portion of the definition of "Investor" is unclear. The Request appears to seek documents showing any Investor owns a beneficial interest in anything at any time. For these same reasons, the Request is also objectionable because it seeks information not relevant to the claims or defenses in this case. "District courts need not condone the use of discovery to engage in 'fishing expeditions[s].' " *Rivera v. NIBCO*, 364 F.3d 1057, 1072 (9th Cir.2004). Defendant further objects because subsection B(ii) seeks documents and communications protected by the attorney client and work product privileges, and Defendant's duty of confidentiality to clients as some of the Investors were clients of Defendants. *See, e.g.*, *Upjohn v. U.S.*, 449 U.S. 383 (1981); Fed. R. Civ. Pro. 26; Fed. R. Evid. 501 and 502. The Request appears to seek documents showing any corporate entity Mr. Kesner has represented in his entire career, which is privileged and irrelevant.

<u>**KESNER INTERROGATORY NO. 1**</u>

Identify each Person or entity for whom You serve or served as legal counsel who is or was a beneficial owner of MabVax securities and/or provides or provided other professional services to MabVax and for each Person or entity identified, please provide the start and end dates of your representation.

<u>**RESPONSE TO KESNER INTERROGATORY NO. 1**</u>

Defendant objects to Interrogatory No. 1 because the time frame is overbroad, unduly burdensome and irrelevant to the claims at issue. Defendant objects because the term "beneficial owner" is not defined and Plaintiff does not identify any "beneficial owner[s]", thus the term is vague and ambiguous.

Defendant objects because the interrogatory seeks information not in Defendant's possession. Beneficial owner is a term believed to relate to the securities ownership information known by beneficial owners through transfer agents and from their stock-broker and investment records and the monthly statements of ownership, which constantly vary, provided to beneficial owners. Defendant does not possess private and confidential brokerage information, reports, or investment records of others.

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

Defendant objects on the grounds of attorney client and work product privileges because discussions and analysis (if any) regarding whether a client is or was a "beneficial owner" of MabVax securities are privileged communications. In addition, those discussions are not relevant to the claims in this case.

Defendant objects because under New York law, the identity of clients not parties to the action is privileged. *Matter of Jacqueline F.*, 391 N.E.2d 967, 970 (1979) (the rule requiring disclosure is generally applied only where the client whose identity is sought is a party to the pending civil litigation and the circumstances otherwise warrant such disclosure). Further, Defendant has an obligation to maintain client confidentiality under Rule 1.6 of the New York Rules of Professional Conduct.

To the extent California law applies, Defendant objects because a client's identity is private information. *Hooser v. Superior Court*, *Hooser v. Superior Court* (2000) 84 Cal.App.4th 997, 1002, 101 Cal.Rptr.2d 341 (client names are protected under the right to privacy under the California State Constitution). Further, Defendant has an obligation to maintain confidentiality under Rule 1.6 of the California Rules of Professional Conduct and §6068(e)(1) of the California Business and Professions Code.

Notwithstanding the foregoing objections, Defendant previously identified certain persons as clients of the Firm in its engagement letters and received written conflict waivers from Plaintiff as to which identification the foregoing objections relating to identifying clients are not asserted.

## KESNER INTERROGATORY NO. 2

Identify all entities in which (A) any Investor owns or owned a beneficial interest and (B) (i) You own or owned a beneficial interest or (ii) You serve or served as legal counsel.

## RESPONSE TO KESNER INTERROGATORY NO. 2

Defendant objects to Interrogatory No. 2 because the time frame is overbroad, unduly burdensome and irrelevant to the claims at issue. Defendant objects because the term "beneficial interest" is not defined and therefore the interrogatory is vague and ambiguous. Defendant objects because the interrogatory seeks information not in Defendant's possession. Defendant further objects because the information sought is irrelevant to Plaintiff's claims because it does not relate to Plaintiff. As to Defendant, Paradox Capital Partners, LLC and Darwin Ret, LLC purchased securities of Plaintiff on behalf of Defendant with full knowledge, approval and written consent of Plaintiff.